## COMMONWEALTH *vs.* ADAM V. CALLAHAN.

Hampshire. April 7, 2003. - November 26, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Privileged Communication. Evidence,* Communication between patient and psychotherapist, Privileged communication, Sex offender, Hospital record.

This court concluded, based on principles of statutory construction, legislative intent, and case law, that G. L. c. 123A, § 13 (*b*), contained no authority for a judge to order the production of privileged hospital and psychotherapy records, for use by qualified examiners in making a diagnosis and recommendation concerning the subject of a petition for commitment as a sexually dangerous person. [438-443]

CIVIL ACTION commenced in the Superior Court Department on April 12, 2001.

Motions for the production of records were heard by *Judd J. Carhart,* J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted an application for direct appellate review.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Steven Greenbaum,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. A Superior Court judge determined there was probable cause to believe the defendant was a sexually dangerous person as defined by G. L. c. 123A, § 1. On the Commonwealth's motion, the judge ordered McLean Hospital and the Departments of Social Services and Youth Services (departments) to produce documents pertaining to the defendant. The judge stayed the proceedings, and pursuant to G. L. c. 231, § 111,[1] and Mass. R. Civ. P. 64 (a), as amended, 423 Mass.

---

[1]General Laws c. 231, § 111, states in relevant part: "If a justice of the superior court is of the opinion that an interlocutory finding or order made by

1403 (1996), reported four questions concerning the propriety of his orders. The reported questions asked whether the judge's orders were proper, whether in camera review of the documents is necessary, and if so, what standards and time limits should apply to the review.[2] We granted the defendant's application for direct appellate review. After oral argument before this court, we requested that the parties submit supplemental briefs.[3] Because the documents are privileged and we conclude that the judge had no authority under the statute to order their production, the answer to the first reported question is that it was improper for the judge to order the production of the records. Accordingly, we need not address the remainder of the reported questions.[4]

*Background.* The defendant pleaded guilty in 1997 to rape and abuse of a child, indecent assault and battery on a child, assault with intent to rape, and two counts of rape, and was

---

him so affects the merits of the controversy that the matter ought to be determined by the appeals court before any further proceedings in the trial court, he may report such matter to the appeals court, and may stay all further proceedings except such as are necessary to preserve the rights of the parties."

[2]The reported questions were as follows:

"1. Whether the orders of the court, dated June 29 and July 5, 2001, for production of records by McLean Hospital, DYS [Department of Youth Services], and DSS [Department of Social Services] were proper?

"2. Is in camera review prior to release of records to the qualified examiners required?

"3. What is the proper standard to be applied in the determination whether particular records or portions of records are to be supplied to the qualified examiners?

"4. If the court conducts in camera review, what time limits, if any, apply to that review and how does the review effect or modify the time limits set out in G. L. c. 123A, §§ 13 and 14?"

[3]The parties were asked to address the issue whether the Legislature, in its 1999 amendments to the sexually dangerous person statute (G. L. c. 123A), intended to abrogate the patient-psychotherapist privilege or any other privileges.

[4]We address only the issue of a judge's authority to order the production of privileged documents pursuant to G. L. c. 233, § 20B, and G. L. c. 112, § 135B. We do not decide whether a judge may order the production of non-privileged documents. Cf. *Commonwealth* v. *Markvart*, 437 Mass. 331, 336-337 (2002) (General Laws c. 123A, § 13 [*b*], allows nonprivileged material — police reports and witness statements — to be turned over to qualified examiners, provided the requirements set out in *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 531 [1986], are satisfied).

sentenced to concurrent terms of from three to five years in a State prison for two of the crimes, to be followed by concurrent probationary terms of ten years. In April, 2001, approximately two months prior to the defendant's anticipated release from prison, the Commonwealth brought a petition for commitment under G. L. c. 123A, § 12 (*b*), alleging that the defendant was a sexually dangerous person.

In June, 2001, the Commonwealth filed an amended petition based on the crimes for which the defendant was then incarcerated, his behavior in prison, and his criminal history. The defendant's criminal history consisted of an adjudication of delinquency for murdering his stepmother in 1982, when he was fifteen years old. While the defendant was in the custody of the Department of Youth Services, he was sent to McLean Hospital for mental health treatment for a period of five to six years. The Commonwealth has no information regarding the defendant's diagnosis or treatment there.

After finding probable cause to believe that the defendant was a sexually dangerous person, the judge committed him to the treatment center for examination and diagnosis by two qualified examiners, pursuant to G. L. c. 123A, § 13 (*a*). The Commonwealth then filed motions seeking orders for the production of records pertaining to the defendant from McLean Hospital and the departments. The defendant opposed the motions, arguing, inter alia, that the documents were privileged and the court had no authority under G. L. c. 123A, § 13 (*b*), to order their production. The judge allowed the motions and provided for an initial in camera review pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993).[5] With the agreement of the parties, the judge stayed the evaluation of the defendant at the treatment center and reported the four questions. As stated, we need address only the first reported question.

*Discussion.* General Laws c. 123A, § 13 (*b*), inserted by St. 1999, c. 74, § 8, reads:

---

[5]The principles of *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), are inapposite. A criminal defendant has a right to due process that will, in some circumstances, require production of otherwise privileged materials, and the procedures of *Bishop* were designed to identify those specific circumstances. The Commonwealth, however, has no comparable due process right that would potentially trump the restrictions imposed by its own laws.

"The court shall supply to the qualified examiners copies of any juvenile and adult court records which shall contain, if available, a history of previous juvenile and adult offenses, previous psychiatric and psychological examinations and such other information as may be pertinent or helpful to the examiners in making the diagnosis and recommendation. The district attorney or the attorney general shall provide a narrative or police reports for each sexual offense conviction or adjudication as well as any psychiatric, psychological, medical or social worker records of the person named in the petition in the district attorney's or the attorney general's possession. The agency with jurisdiction over the person named in the petition shall provide such examiners with copies of any incident reports arising out of the person's incarceration or custody."[6]

The defendant argues both that the documents are privileged and that it was improper for the judge to order the production of the documents because of the privilege. The Commonwealth agrees that the documents are privileged.[7]

We conclude that G. L. c. 123A, § 13 (*b*), contains no authority for a judge to order the production of *privileged* documents for use by the qualified examiners. We find support for our decision in principles of statutory construction, legislative intent, and case law.

General Laws c. 123A, § 13 (*b*), requires that certain materials be given to the qualified examiners. However, the statute is silent regarding whether the statute covers privileged documents. At issue here are privileges protected by G. L. c. 233, § 20B (testimonial privilege for communications between "patient and a psychotherapist relative to the [patient's] diagnosis or treatment"), and G. L. c. 112, § 135B (testimonial privilege for communications between "client and a social worker . . . relative to the diagnosis or treatment of the client's mental or emotional condition") (privilege statutes). Where possible, a

---

[6]General Laws, c. 123A, §§ 12-16, inserted by St. 1999, c. 74, § 8, concerned "the procedures of adjudicating persons as sexually dangerous." *Commonwealth* v. *Bruno*, 432 Mass. 489, 494 (2000).

[7]In light of our decision in this case, we acknowledge, but see no need to address directly, each argument the defendant and the Commonwealth have raised.

statute should be "interpreted in harmony with prior enactments to give rise to a consistent body of law." *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 583 (1994), quoting *Hadley* v. *Amherst*, 372 Mass. 46, 51 (1977). Therefore, G. L. c. 123A, § 13 (*b*), must be reconciled with the protections the privilege statutes afford.

The earliest version of the current § 13 (*b*) was enacted in 1958.[8] In 1968, the Legislature established the patient-psychotherapist privilege. G. L. c. 233, § 20B, inserted by St. 1986, c. 418. In *Commonwealth* v. *Lamb*, 365 Mass. 265 (1974), this court concluded that the psychotherapist-patient privilege applied to a sexually dangerous person proceeding. The court stated that communications between a court-appointed psychiatrist and a person in custody at a treatment center undergoing a court-ordered examination were privileged, subject to exception (*b*) of c. 233, § 20B (communications admissible "only on issues involving the patient's mental or emotional condition" if made "after having been informed that the communications would not be privileged"). *Id.* at 266-267 & n.1, 269-270. The case was remanded to the Superior Court for a hearing.

In 1977, this court heard Lamb's appeal from the Superior Court's holding that he was a sexually dangerous person. *Commonwealth* v. *Lamb*, 372 Mass. 17 (1977). The court held that there was no error in allowing the Commonwealth to introduce a psychiatrist's opinion, where that opinion was not based on privileged communications. *Id.* at 20-22.

In 1985, the Legislature rewrote G. L. c. 123A. St. 1985, c. 752, § 1. When the Legislature enacts legislation "[w]e assume . . . that [it is] aware of existing statutes," *Charland* v. *Muzi Motors, Inc.*, *supra* at 582, quoting *Mathewson* v. *Contributory Retirement Board*, 335 Mass. 610, 614 (1957),

---

[8]The language was codified at G. L. c. 123A, § 4, as appearing in St. 1958, c. 646, § 1. It stated, in relevant part: "The court shall supply to the examining psychiatrists copies of the court record, and the probation officer shall supply them with the probation record of the person committed for examination. The probation record shall contain a history as such person's previous offences and previous psychiatric examinations and such other information as may be helpful to assist such psychiatrists in making their diagnosis." In this opinion, for the sake of efficiency, we refer to all versions of the statute by using the present system of section numbering of c. 123A, i.e., § 13 (b).

and "presume that the Legislature is aware of the prior state of the law as explicated by the decisions of this court." *L.W.K.* v. *E.R.C.,* 432 Mass. 438, 455 (2000) (Cowin, J., dissenting). The 1985 version of the statute did not alter or amend the language of § 13 (*b*) to remove the application of privilege in light of either the 1968 enactment of the patient-psychotherapist privilege (G. L. c. 233, § 20B), or this court's application of the privilege to sexually dangerous person proceedings in the *Lamb* case.[9]

In 1986, in *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 526 (1986), this court, citing *Commonwealth* v. *Lamb,* 365 Mass. 265 (1974), held that the patient-psychotherapist privilege applied where the Commonwealth, absent a court order, chose to have a psychiatrist interview a juvenile in custody and where the psychiatrist did not precede those conversations with the *Lamb* warnings. This court held that it was reversible error to use the conversations at the proceeding to extend the juvenile's commitment.[10] *Id.* at 524-525.

In 1999, the Legislature again revised G. L. c. 123A. As in 1985, the revisions did not alter or amend the language now appearing in § 13 (*b*) to remove the application of privilege in light of *Department of Youth Servs.* v. *A Juvenile, supra.*[11]

Given our assumption that the Legislature is aware of both the decisions of this Court and previous legislation, and yet has

---

[9] "The court shall supply to the qualified examiners copies of the juvenile record and adult court records, and the probation officer shall supply them with them the juvenile and adult probation record of the person committed for examination. The probation record shall contain a history, where available, of such person's previous adult and juvenile offenses and previous psychiatric and psychological examinations and such other information as may be helpful to the examiners in making their diagnosis. The district attorney shall provide the examiners with a narrative summary of the facts, where available, of each sexual offense of which the person has been convicted as an adult or a juvenile." G. L. c. 123A, § 4, as appearing in St. 1985, c. 752, § 1.

[10] The proceeding was conducted pursuant to G. L. c. 120, § 18, where the juvenile was determined to be "physically dangerous to the public" and ordered held by the Department of Youth Services beyond his eighteenth birthday. *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 519 (1986).

[11] The text of the 1999 version of G. L. c. 123A, § 13 (*b*), is presented *supra.*

done nothing either to alter the language of G. L. c. 123A, § 13 (b), or to amend the privilege statutes to add another exception to take into account § 13 (b),[12] it is clear that we must conclude, as the parties concur, that the Legislature did not intend to abrogate existing privileges.[13] Our conclusion is further supported by the fact that, in other instances, the Legislature has acted to abrogate privileges. For example, the Legislature has abrogated privilege where child abuse or the abuse of a patient or resident of a medical facility may be present. See G. L. c. 119, § 51A (abrogating privileges in G. L. c. 112, §§ 135A and 135B), and G. L. c. 111, § 72G (abrogating privileges in G. L. c. 233, §§ 20 and 20B).

The documents are privileged under G. L. c. 112, § 135B, and G. L. c. 233, § 20B, and the Legislature did not abrogate those privileges in enacting the amendments to G. L. c. 123A, § 13 (b). The judge, therefore, did not have the authority to order the production of such documents. We are aware this interpretation may, in some cases, deprive the qualified examiners (and ultimately the fact finder) of highly relevant evidence. Where the respondent has a significant psychiatric history (here, a period of many years of observation, testing, and treatment at a psychiatric hospital), a qualified examiner would undoubtedly want to review records pertaining to that history before rendering an opinion as to the nature of any "mental abnormality or personality disorder" suffered by the respondent. G. L. c. 123A, § 1. However, it is up to the Legislature to decide whether privileges that it created in G. L. c. 112, § 135B, and G. L. c. 233, § 20B, should apply in proceedings for the commitment of an allegedly sexually dangerous person. We are constrained

---

[12]The most recent amendments to G. L. c. 233, § 20B, were in 2000 (St. 2000, c. 348, § 2), and the most recent amendments to G. L. c. 112, § 135B, were in 1993 (St. 1993, c. 339, § 2).

[13]In contrast, for example, a Kansas statute specifically abrogates privileges for the purpose of determining whether an individual is a sexually violent predator. See Kan. Stat. Ann. § 59-29a16 (2002) ("In order to protect the public, relevant information and records which are otherwise confidential or privileged shall be released . . . for the purpose of . . . determining whether a person is or continues to be a sexually violent predator"). See generally *Commonwealth* v. *Bruno*, 432 Mass. 489, 499 (2000) ("Kan. Stat. Ann. §§ 59-29a01 et seq. . . . . contain[] many provisions similar to those in c. 123A").

by the language and history of the current statute, which indicate that the privileges are not to be abrogated. "We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design," *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 (2002), and cases cited.

The answer to the first reported question is "No," and in light of this conclusion, we need not answer the remaining reported questions. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*