COMMONWEALTH *vs.* DAVID FERREIRA.

No. 05-P-793.

Middlesex. February 6, 2006. - August 14, 2006.

Present: RAPOZA, GELINAS, & GRASSO, JJ.

*Sex Offender. Practice, Civil,* Sex offender, Assistance of counsel. *Statute,* Construction.

A petition for commitment of a defendant as a sexually dangerous person, brought by the Commonwealth after the defendant had first been placed on probation for a sexual offense and then later committed for a violation of probation, was timely filed under G. L. c. 123A, § 12(*a*), as inserted by St. 1999, c. 74, § 8. [111-114]

A defendant committed as a sexually dangerous person under G. L. c. 123A failed to demonstrate that his counsel had rendered ineffective assistance at the commitment proceedings, either by failing to facilitate interviews with two qualified examiners appointed to examine the defendant, or by acquiescing in reasonable delays in the proceedings that extended the hearing date beyond the statutory sixty days. [114-117]

PETITION filed in the Superior Court Department on April 29, 2002.

The case was heard by *E. Susan Garsh*, J.

*Matthew Campbell* for the defendant.

*Kenneth L. Bresler*, Special Assistant District Attorney, for the Commonwealth.

GELINAS, J. David Ferreira appeals from an order of commitment to the Massachusetts Treatment Center (treatment center), contending that the filing of the petition for commitment was in error, as he had not been incarcerated for a sexual offense immediately after conviction, but only after having first been placed on probation for the offense and then later committed for a violation of probation. He further argues that his counsel was ineffective for failing adequately to facilitate interviews with two qualified examiners appointed to examine him, and because

counsel acquiesced in delays that resulted in a violation of his right to trial within sixty days, as required by G. L. c. 123A, § 14(*a*). We affirm the order of commitment.

In July, 1997, David Ferreira pleaded guilty to indictments charging assault with intent to rape, indecent assault and battery on a person fourteen or over, kidnapping, and assault by means of a dangerous weapon. He was sentenced concurrently on the second (indecent assault and battery on a person fourteen or over) and fourth (assault by means of a dangerous weapon) indictments to the house of correction for two and one-half years, with fifteen months to be served, and the balance suspended for five years. On indictments one (assault with intent to commit rape) and three (kidnapping), Ferreira was sentenced to concurrent terms of five years' probation, to begin from and after the committed portion of his sentences.

Ferreira was brought before the court several times for violation of probation after his release from the initial period of incarceration. In April, 1998, the court found him in violation of probation and imposed the balance of his sentences on indictments two and four, to be served concurrently, and to five years' probation upon his release. In October, 1999, after being released to the community, he was again found in violation of probation and sentenced on the third indictment (kidnapping) to six months in the house of correction, committed, and on the first indictment (assault with intent to rape) to five years of probation from and after the committed sentence. In January, 2001, again after release, Ferreira was found in violation of probation for the third time; on the first indictment (assault with intent to rape), his probation was extended to August 27, 2005. In December, 2001, Ferreira was found in violation of probation for a fourth time and sentenced to serve one year in the house of correction on the first indictment, the first time he had been incarcerated on this indictment. The first indictment is a sex offense as set out in G. L. c. 123A, § 1 (the sexual offense).

On April 29, 2002, while Ferreira was incarcerated on the sentence imposed on the sexual offense, the Commonwealth filed a petition seeking his civil commitment as a sexually dangerous person under G. L. c. 123A, §§ 1 et seq., as then in effect

(see note 2, *infra*).[1] In August, 2002, after a hearing, a Superior Court judge found probable cause to believe that the respondent was a sexually dangerous person, and Ferreira was committed to the treatment center for examination and diagnosis under the supervision of two qualified examiners, pursuant to G. L. c. 123A, § 13(*a*).

Doctor Robert H. Joss, one of the qualified examiners, attempted to examine Ferreira, but he declined to be examined without his lawyer present and without the examination being recorded by audiotape. Doctor Joss prepared his report without examining the respondent.

Doctor John L. Peebles, another of the qualified examiners, attempted to examine Ferreira; Ferreira declined to be examined without his lawyer present. Doctor Peebles attempted to examine Ferreira on a second occasion. Ferreira again declined to be examined because the examination would not be recorded by audiotape. Doctor Peebles prepared his report without examining the respondent.

Both Doctors Joss and Peebles opined that Ferreira was a sexually dangerous person; each based his opinion on their respective reviews of Ferreira's records. After a jury-waived trial, Ferreira was found to be a sexually dangerous person and committed to the treatment center for between one day and life.

*Validity of the petition.* Ferreira argues, for the first time on appeal, that the petition should be dismissed as it was untimely under the version of the statute in effect when the petition was filed in April, 2002.[2] He contends that the initial probationary

[1]While incarcerated on earlier convictions, Ferreira was determined to be a sexually dangerous person under a prior version of the statute. In July of 1983, under the then operative statute, while Ferreira was a prisoner in the custody of the Department of Corrections (department), a Superior Court judge, after an appropriate examination and hearing, determined Ferreira to be sexually dangerous, but in lieu of commitment to the treatment center, the court ordered him returned to the department with special conditions. In July, 1986, the same examiner determined that Ferreira was no longer a sexually dangerous person. A Superior Court judge entered such a finding in December, 1986, and Ferreira eventually was paroled in 1988.

[2]General Laws c. 123A, § 12(*a*), as inserted by St. 1999, c. 74, § 8, in effect in April of 2002, provided: "(a) Any agency with jurisdiction of a person who has been convicted of or adjudicated as a delinquent juvenile or a youth-

period imposed on the sexual offense, coupled with his comple-
tion of the original committed portions of his remaining sentences,
constituted a "release," barring the Commonwealth from pursu-
ing his commitment as a sexually dangerous person, even though
the petition was otherwise timely filed during the period of his
incarceration for a sexual offense. In support of his claim, Fer-
reira points to language in *Commonwealth* v. *Shedlock,* 58 Mass.
App. Ct. 445 (2003), to the effect that "release," as used in G. L.
c. 123, § 12(*a*), "must mean a sexual offender's release into
general society at the end of a continuous period of incarceration
that began with his conviction [of] a sexual offense." *Com-
monwealth* v. *Shedlock, supra* at 451. As he was not originally
incarcerated on his conviction of the sexual offense, and as he
was released into the community after service of some portion of

ful offender by reason of a sexual offense as defined in [G. L. c. 123A,] sec-
tion 1 or who has been charged with such offense but has been found
incompetent to stand trial shall notify in writing the district attorney of the
county where the offense occurred and the attorney general six months prior
to the release of such person, except that in the case of a person who is
returned to prison for no more than six months as a result of a revocation of
parole or who is committed for no more than six months, such notice shall be
given as soon as practicable following such person's admission to prison. In
such notice, the agency with jurisdiction shall also identify those prisoners or
youths who have a particularly high likelihood of meeting the criteria for a
sexually dangerous person."

Under the statute as currently in effect, Ferreira's claim would be
groundless. The amended version of the statute, effective April 7, 2004,
provides as follows: "Any agency with jurisdiction of a person who has *ever*
been convicted of or adjudicated as a delinquent juvenile or a youthful of-
fender by reason of a sexual offense as defined in section 1, *regardless of the
reason for the current incarceration, confinement or commitment,* or who has
been charged with such offense but has been found incompetent to stand trial,
or *who has been charged with any offense, is currently incompetent to stand
trial and has previously been convicted of or adjudicated as a delinquent
juvenile or a youthful offender by reason of a sexual offense,* shall notify in
writing the district attorney of the county where the offense occurred and the
attorney general six months prior to the release of such person, except that in
the case of a person who is returned to prison for no more than six months as
a result of a revocation of parole or who is committed for no more than six
months, such notice shall be given as soon as practicable following such
person's admission to prison. In such notice, the agency with jurisdiction shall
also identify those prisoners or youths who have a particularly high likelihood
of meeting the criteria for a sexually dangerous person." G. L. c. 123A,
§ 12(*a*), as amended by St. 2004, c. 66, §§ 7-9 (amended language is noted
by the emphasis supplied).

the sentences on which he was incarcerated, Ferreira asserts that he was "released" prior to the Commonwealth's filing of the commitment proceedings and that any subsequent attempt to commit him is untimely. Ferreira reasons that he was not deemed so imminent a danger at the time of his release as to then warrant a petition for his commitment.

Although facially attractive, the argument lacks merit. We first note that no such requirement exists in the language of the statute. General Laws c. 123A, § 12(*a*), as then in effect, permitted the Commonwealth to file a petition to determine whether a person, convicted of an enumerated offense, was sexually dangerous, and for their civil commitment where an "agency with jurisdiction of a person who has been convicted of . . . a sexual offense[,] . . . six months prior to the release of such person," gave notice that such person was about to be released. See note 2, *supra*. Nothing in this language requires that Ferreira be incarcerated on the sexual offense immediately after trial; it is sufficient that he has been convicted of the offense and that the notice be given timely prior to his release. "[S]tatutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001).

Further, the statute itself envisions the possibility of such notice and petition where a defendant has been released into the community and reincarcerated; § 12(*a*) further provided that "in the case of a person who is returned to prison for no more than six months as a result of a revocation of parole . . . , such notice shall be given as soon as practicable following such person's admission to prison." See note 2, *supra*.

While we recognize that under the then extant statute a defendant could not be subject to a petition under G. L. c. 123A where the sexual offense occurred in the past, where all penalties attendant on conviction of that offense had been completed, and where the defendant was incarcerated as the result of new, nonsexual offenses, see *Commonwealth* v. *McLeod*, 437 Mass.

286 (2002),[3] such is not the case here. At the time of the notice and petition, Ferreira was serving a sentence on the sexual offense, albeit having been originally released to the community after conviction of the offense.

It is clear that proceedings under G. L. c. 123A are designed to concentrate attention on a defendant's mental condition at the time of the petition and hearing, as the condition might affect the public were he to be released into the community at that time. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 498 (2000) (conduct triggering the statute's application is not prior conviction of a sexual offense, but the current mental condition of a defendant); *Commonwealth* v. *McLeod*, *supra* at 291 (proceedings should be brought against persons who are about to be released into the community but who, because they are sexually dangerous, are likely to commit another sexual offense, and should not be released). Ferreira's position here frustrates this legislative purpose. The statute, even according to its then wording, was designed to protect the public from one whose mental condition, as determined prior to release from incarceration, might lead to further sexual offenses.

To the extent that our decision in *Commonwealth* v. *Shedlock*, *supra*, can be read to require, under the then extant statute, continuous incarceration from the time of conviction to the time the petition is filed, where a defendant is incarcerated on a sexual offense at the time the petition is filed, we expressly reject such a reading. The situation, of course, will not recur with respect to petitions filed after the effective date of the statutory amendments. See note 2, *supra*.

*Ineffective assistance of counsel.* Ferreira next claims that his counsel was ineffective, in that he did not facilitate interviews with the two examiners, and that, although he filed a motion to dismiss the petition on the basis that the hearing did not take place within sixty days of the filing of the petition, counsel acquiesced in the continuances that put the hearing beyond the statutory sixty days.

In the course of proceedings under G. L. c. 123A, Ferreira was entitled to counsel at the hearing on probable cause, G. L.

---

[3]For the current state of the law, see note 2, *supra*.

c. 123A, § 12(*d*)(1); during the course of temporary commitment and examination, § 13(*c*); at the trial to determine whether he was sexually dangerous, § 14(*b*); and at any hearing to determine competency, § 15 (by applicability of all procedures of § 14 save trial by jury). Even absent these statutory mandates, Ferreira would be entitled to counsel under State and Federal notions of due process. "While commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " *Commonwealth v. Bruno*, 432 Mass. at 502, quoting from *Commonwealth v. Travis*, 372 Mass. 238, 250 (1977). As in the context of appointment of counsel in civil proceedings under G. L. c. 119, § 29, we conclude that the right to counsel in G. L. c. 123A proceedings would be of little value if there were no expectation that counsel's assistance will be effective. See *Care & Protection of Stephen*, 401 Mass. 144, 149 (1987). In considering the question of effective assistance of counsel in c. 123A proceedings, we shall look to decisions in the criminal context as a guide. See *ibid.* (where counsel is appointed under statute in civil care and protection proceedings, we look to decisions in the context of criminal representation in considering the question of ineffective assistance of counsel). Thus our review involves the familiar standards found in *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974).

" '[T]he preferred method of resolving factual disputes concerning the conduct of the original trial' is for the aggrieved party to file a motion for a new trial." *Care & Protection of Stephen, supra* at 150, quoting from *Commonwealth v. Saferian, supra* at 90 n.1. See *Commonwealth v. Zinser*, 446 Mass.' 807, 811 (2006). A motion testing the effectiveness of counsel in the trial court has the benefit of affidavits and other materials from trial counsel, and the motion judge, if also the trial judge, would have the benefit of having observed counsel during the course of the proceedings. However, we will hear a claim of ineffective assistance of counsel on direct appeal when the factual basis of the claim appears indisputable, as here, on the trial record, and the issues do not implicate any factual questions more appropriately resolved by the trial judge. See *Lannon v. Com-*

*monwealth,* 379 Mass. 786, 788 (1980); *Commonwealth* v. *Adamides,* 37 Mass. App. Ct. 339, 344 (1994).

A review of this record reveals that Ferreira received the benefit of effective counsel. As to Ferreira's claim that his counsel failed to facilitate the interviews with the qualified examiners, we note that Ferreira has no constitutional right to have counsel attend the interviews, or to have the interviews recorded by audiotape, as he requested. See *Commonwealth* v. *Trapp,* 423 Mass. 356, 359, cert. denied, 519 U.S. 1045 (1996).[4] Further, Ferreira had a choice with respect to the interview process established by G. L. c. 123A, § 13, and that choice included the right to refuse to speak with the examiners, see *Sheridan, petitioner,* 412 Mass. 599, 604-605 (1992), a right that he ultimately exercised.

Ferreira argues that he set the conditions of the interviews, that counsel be present and that the interviews be recorded by audiotape, on the advice of counsel, and that, once he had set the conditions, counsel failed to follow up, either in court or with the examiners, to facilitate the interviews on the conditions established. Nowhere in the record does Ferreira attempt to demonstrate what material the interviews would have produced, or how such material would have altered the judge's findings and rulings. Ferreira has not met and cannot meet the second step of the inquiry under *Saferian,* as nothing in the record here demonstrates that his counsel likely deprived him of a substantial ground of defense. *Commonwealth* v. *Saferian,* 366 Mass. at 96. There is nothing to show that being examined would have benefited him materially. *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). Ferreira merely asserts that his counsel's actions, in not arranging for interviews by the qualified examiners, "certainly affected the trial." The assertion is mere speculation. *Commonwealth* v. *Gonzalez,* 443 Mass. 799, 811 (2005). See *Commonwealth* v. *Dinkins,* 440 Mass. 715, 718 (2004) (claim that expert "could have" reached different conclusion with access to evidence was speculation and is

---

[4]*Commonwealth* v. *Trapp,* supra at 359, did not reach the issue of taping the interview, as it had not been raised at trial. While the court indicated that videotaping the interview "might be a sound idea," *ibid.,* videotaping has not been made a constitutional requirement in the Commonwealth.

not substitute for evidence). Ferreira may not speculate, and then rely on the speculation as fact on appeal. *Commonwealth* v. *Hubbard*, 371 Mass. 160, 168-169 (1976). See *Commonwealth* v. *Duran*, 435 Mass. 97, 103 (2001) ("Speculation, without more, is not a sufficient basis to establish ineffective representation").

Ferreira also argues that his counsel was seriously incompetent for acquiescing in delays that caused a violation of his right to a trial within sixty days under G. L. c. 123A, § 14(*a*). This argument meets neither of the tests set out in *Commonwealth* v. *Saferian, supra* at 96.

General Laws c. 123A, § 14(*a*), provides that within sixty days after the two qualified examiners file their reports, trials under the statute must generally begin. Section 14(*a*) also provides that the court may continue a trial if either party moves for a continuance and shows good cause, or if the court decides on its own motion that the interests of justice require a continuance, except that the court may not allow a continuance if it would "substantially prejudice[]" the respondent. The exceptions to the time limit in § 14(*a*) are to be strictly construed, but some flexibility is permitted. *Commonwealth* v. *DeBella*, 442 Mass. 683, 688 (2004).

The reasons advanced for the continuance of the case were reasonable, as was determined by the judge hearing Ferreira's motion to dismiss, and well within the flexibility permitted. The reasons included the tragic and unexpected death of the assistant district attorney assigned to the case. Further, Ferreira can show no prejudice as a result of the continuances. Although counsel did not object to the continuances, nothing in the record demonstrates that, had he objected, the continuances would have been denied, much less that he would have benefited had the trial been held at an earlier date.

*Judgment affirmed.*