## Commonwealth *vs.* Randy Sargent.

Worcester. May 7, 2007. - July 24, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Assistance of counsel. *Due Process of Law,* Sex offender, Assistance of counsel. *Practice, Civil,* Sex offender, Assistance of counsel.

The judge at the trial of a petition to commit the defendant as a sexually dangerous person pursuant to G. L. c. 123A did not err in admitting in evidence the testimony and written report of a qualified examiner who had interviewed the defendant without his attorney being present, where the interview was not a critical stage of the process at which the defendant had a right to counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights [579-580], and where there existed no statutory right to counsel at the interview [580-581]; further, there was no merit to the defendant's claim that he was denied the right to counsel when he was making the decision whether to undergo the examination [581-583].

At the trial of a petition seeking civil commitment, the judge's finding that the defendant was a sexually dangerous person was not clearly erroneous, where she found that the defendant suffered from the mental abnormality of pedophilia, and where, although the judge did not find that the defendant suffered from a personality disorder, she concluded that the finding of pedophilia was sufficient to cause him to be likely to reoffend. [583-584]

Dismissal of a petition to commit the defendant as a sexually dangerous person was not warranted in the narrow circumstances where the Commonwealth, in violation of G. L. c. 123A, § 14 (*a*), filed its petition one day before the reports of two qualified examiners were filed, but proceeded on the basis that the reports had been completed. [584-585]

At the trial of a petition to commit the defendant as a sexually dangerous person pursuant to G. L. c. 123A, the advice of the defendant's counsel not to testify did not constitute ineffective assistance, where the defendant did not demonstrate that his testimony would have materially aided the defense. [585-586]

Petition filed in the Superior Court Department on January 18, 2002.

The case was heard by *Elizabeth M. Fahey,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert E. Fox* for the defendant.

*Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

*Nancy Ankers White*, Special Assistant Attorney General, & *Mary P. Murray*, for Department of Correction, amicus curiae, submitted a brief.

*Richard J. Fallon*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, J. The defendant challenges his commitment as a "sexually dangerous person" pursuant to G. L. c. 123A, asserting that he was interviewed by a qualified examiner[1] in violation of his right to counsel. The defendant also argues that the judge's findings that he was a sexually dangerous person constituted clear error, that the Commonwealth did not timely file the petition for trial, and that he received ineffective assistance of counsel. We transferred the case from the Appeals Court on our own motion. Because we hold that there is no right to counsel at an interview with a qualified examiner under G. L. c. 123A and find no error in the defendant's other claims, we affirm the order of the Superior Court.[2]

*Background.* The facts underlying this appeal are not in dispute. On April 7, 1993, the defendant pleaded guilty to two counts of rape of a child and one count of indecent assault and battery on a child under the age of fourteen years. He was sentenced to three concurrent terms of from six to ten years in State prison.

On January 18, 2002, the Commonwealth filed a petition, pursuant to G. L. c. 123A, § 12 (*b*), to commit the defendant as

---

[1]A qualified examiner is defined under G. L. c. 123A, § 1, as "a physician who is licensed pursuant to section two of chapter one hundred and twelve who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed pursuant to [G. L. c. 112, §§ 118-129]; provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction. A 'qualified examiner' need not be an employee of the department of correction or of any facility or institution of the department."

[2]We acknowledge the amicus briefs of the Committee for Public Counsel Services and the Department of Correction.

a sexually dangerous person. A judge in the Superior Court found sufficient cause that the defendant was sexually dangerous, and issued an order for his temporary commitment to the Massachusetts Treatment Center (treatment center) pursuant to G. L. c. 123A, § 12 (*e*). On July 3, 2002, after a hearing, a different judge in the Superior Court found probable cause to believe that the defendant was a sexually dangerous person and ordered him committed to the treatment center for examination and diagnosis by two qualified examiners. See G. L. c. 123A, § 13 (*a*).

After the defendant was committed to the treatment center, his counsel informed the Commonwealth and the treatment center that he wished to be present at all examinations of the defendant. One qualified examiner interviewed the defendant on August 2, 2002, with the defendant's counsel present.

On August 7, 2002, a second qualified examiner, Barbara Quinones, appeared at the treatment center to interview the defendant. The defendant's counsel was not present. Quinones knew that counsel had asked to be present during any interview. She attempted to contact counsel, but was unable to reach him because he was on vacation. Quinones informed the defendant that he could have his lawyer present if he wished, proceed without his lawyer, or decline the interview. She told him that even if he declined the interview, she would prepare and file her report. The defendant agreed to go forward with the interview without his attorney present.

Quinones also administered warnings on the limits of confidentiality prior to examining the defendant, stating that (1) she was a qualified examiner appointed by the Commonwealth to conduct an evaluation whether the defendant met the criteria of a sexually dangerous person; (2) she would be preparing a report based on the interview; (3) the information the defendant provided would be included in the report and possibly in oral testimony to the court; (4) the content of the interview would not be kept confidential; and (5) the defendant did not have to answer the questions, did not need to participate in the interview at all, and could end the interview at any time. See *Commonwealth* v. *Lamb*, 365 Mass. 265, 269-270 (1974). She also asked the defendant to repeat the warning in his own words, which he did.

Both qualified examiners timely filed written reports that concluded that the defendant was a sexually dangerous person as defined by G. L. c. 123A, § 1. The Commonwealth filed a petition for trial on August 15, 2002.

A jury-waived trial took place in October, 2003. At the conclusion of the trial, the judge issued oral findings of fact and rulings of law, concluding that the Commonwealth had proved beyond a reasonable doubt that the defendant was a sexually dangerous person.

*Discussion.* 1. *Right to counsel.* Prior to trial, the defendant filed a motion to exclude Quinones's report and testimony based on a claimed violation of his right to counsel. The motion was granted, and the Commonwealth sought relief under G. L. c. 231, § 118. A single justice of the Appeals Court vacated the order.

At trial, Quinones testified about her interview with the defendant and her written report was admitted in evidence. The defendant claims that her testimony and report should have been excluded because she interviewed him in violation of his right to assistance of counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. There is no merit to this argument.

The Sixth Amendment and art. 12 provide a right to counsel at every "critical stage" of the criminal process. *Commonwealth* v. *Woods*, 427 Mass. 169, 174 (1998). We need not address whether the Sixth Amendment right to counsel applies to every aspect of the proceedings under G. L. c. 123A,[3] because even if it does, here, as in criminal proceedings, only the decision to undergo a psychiatric evaluation,[4] and not the interview itself, is a critical stage.[5] See *Commonwealth* v. *Trapp*, 423 Mass. 356,

---

[3]In *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2000), quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977), we held that "[w]hile commitment proceedings under [G. L.] c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " Cf. *Gomes* v. *Gaughan*, 471 F.2d 794, 799 (1st Cir. 1973) ("We hold that a c. 123A procedure is a hybrid which, while partaking of many incidents of a criminal prosecution, is not, for constitutional purposes, exactly the same").

[4]We address *infra* the defendant's claim that he was deprived of his right to counsel at the time of his decision to undergo a psychiatric evaluation.

[5]A judge may, in his or her discretion, permit counsel to be present during a psychiatric examination. See *Commonwealth* v. *Trapp*, 423 Mass. 356, 359 (1996), cert. denied, 519 U.S. 1045 (1996).

359, cert. denied, 519 U.S. 1045 (1996). Cf. *Commonwealth* v. *Woods*, *supra* (postconviction probationary evaluation not critical stage entitling defendant to protection under Sixth Amendment or art. 12).

Even though a psychiatric interview is not considered a critical stage in criminal proceedings, the defendant argues that the evaluation of the qualified examiner should be considered a critical stage in proceedings under G. L. c. 123A because "[e]ven more so than in the criminal responsibility context where it is the defendant who is voluntarily raising the mental health issue, in a civil commitment under G. L. c. 123A, it is the Commonwealth [that] raises the issue." We disagree. The "critical stage" test is whether the accused finds himself "confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." *United States* v. *Byers*, 740 F.2d 1104, 1117-1118 (D.C. Cir. 1984), quoting *United States* v. *Ash*, 413 U.S. 300, 310 (1973). See *Commonwealth* v. *Trapp*, *supra* (adopting holding in *Byers* case). In order to constitute a critical stage, the accused must require assistance in "coping with legal problems or assistance in meeting his adversary," and the Sixth Amendment does not apply where there is no possibility "that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary." *United States* v. *Byers*, *supra* at 1118, quoting *United States* v. *Ash*, *supra* at 313, 317. In an interview with a qualified examiner under G. L. c. 123A, a committed person is "not confronted by the procedural system; he ha[s] no decisions in the nature of legal strategy or tactics to make." *United States* v. *Byers*, *supra*. A qualified examiner is not a representative of the Commonwealth requiring a defendant to "defend himself against [a] direct onslaught of the prosecutor." *Id.* See *Commonwealth* v. *Connors*, 447 Mass. 313, 314 n.2 (2006) ("The qualified examiners mentioned in G. L. c. 123A, § 13 [*a*], are independent experts appointed by the court"); note 1, *supra*.[6]

In addition to claiming a constitutional right to counsel at his

---

[6]The Commonwealth and amicus curiae Department of Correction argue that, on a pragmatic level, recognizing a right to counsel at a psychiatric interview could have detrimental consequences. See *United States* v. *Byers*, 740 F.2d 1104, 1120 (D.C. Cir. 1984) ("Even if a psychiatric interview otherwise met one of the two theoretical tests for Sixth Amendment protec-

interview with a qualified examiner, the defendant asserts that he had a statutory right to counsel under G. L. c. 123A. We reject this argument. Although the plain language of G. L. c. 123A provides a right to counsel to individuals who the Commonwealth seeks to commit,[7] it does not expressly provide for a right to counsel at the interviews with the qualified examiners. The provision governing the qualified examiners' evaluations specifies certain protections for this process, see G. L. c. 123A, § 13 (c) ("All written documentation submitted to the two qualified examiners shall also be provided to counsel for the person named in the petition and to the district attorney and attorney general"), but does not provide for counsel to be present at the interviews with the qualified examiners. "We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *Poissant*, 443 Mass. 558, 563 (2005), quoting *Commonwealth* v. *Callahan*, 440 Mass. 436, 443 (2003).

Moreover, the Legislature amended G. L. c. 123A in 1999, see St. 1999, c. 74, after this court's decision in *Commonwealth* v. *Trapp*, *supra*, and the Legislature did not add a right to have counsel present at the interviews with the qualified examiners. Thus, there is no indication that the Legislature intended to provide committed persons the right to counsel at the interviews with the qualified examiners. See *McCarty's Case*, 445 Mass. 361, 366 (2005) (Legislature presumed to be aware of this court's decisions at time it amends statute); *Commonwealth* v. *Callahan*, *supra* at 440-441 (same).[8]

We turn now to the defendant's claim that he was denied the

---

tion, it would be relevant to consider the pragmatic effects of presence of counsel upon the process. The Sixth Amendment . . . is not oblivious to practical consequences"). Having an attorney present at the evaluation could cause disruption and impede the evaluation process. See *Estelle* v. *Smith*, 451 U.S. 454, 470 n.14 (1981). "The 'procedural system' of the law, which is one justification for the presence of counsel . . . is evidently antithetical to psychiatric examination, a process informal and unstructured by design." *United States* v. *Byers*, *supra*.

[7]See, e.g., G. L. c. 123A, §§ 9 (appointment of counsel upon committed person's motion), 12 (right to be represented by counsel at probable cause hearing), 13 (right to counsel, and appointment of counsel if indigent), and 14 (right to counsel, and appointment of counsel if indigent, for trial proceedings).

[8]Because we conclude that the defendant did not have a right to have counsel present at the interview with the qualified examiners, we need not ad-

right to counsel when he was making the decision whether to undergo the examination by the qualified examiner. See *Vuthy Seng* v. *Commonwealth*, 445 Mass. 536, 548 (2005), quoting *Estelle* v. *Smith*, 451 U.S. 454, 471 (1981) (right to counsel includes assistance of attorney "in making the significant decision of whether to submit to the [psychiatric] evaluation and to what end the psychiatrist's findings could be employed"). Even assuming that the right to counsel under the Sixth Amendment or art. 12 applies to provide the defendant with the right to consult with counsel when deciding whether to undergo the interviews with the qualified examiners, no violation of such a right is presented by this record.

We begin by noting that the defendant has submitted no affidavit[9] or other evidence demonstrating that he did not have access to his attorney in the period leading up to the interviews with the qualified examiners or that he asked Quinones to reschedule the interview so that he could consult with his attorney.[10] Nor does he contest Quinones's assertions that she told him about the option of rescheduling and administered *Lamb* warnings, see *Commonwealth* v. *Lamb*, 365 Mass. 265, 269-270 (1974), and that he chose to undergo the interview.

There is no question that counsel was appointed for the defendant before the defendant had to make a decision whether to undergo the evaluations. The fact that the defendant participated in an evaluation with the first qualified examiner five days before Quinones's appearance at the treatment center undercuts his argument that he was denied assistance of counsel in deciding whether to undergo the evaluations. See *Vuthy Seng* v. *Commonwealth, supra* at 549 ("the defendant makes no claim that his counsel was unable to advise him regarding the first court-ordered competency examination. The consequences of

---

dress the issue whether he validly waived that right.

[9]The motion to exclude expert testimony that the defendant filed in Superior Court contains averments by his attorney but is not in the form of an affidavit.

[10]Although the docket indicates that there might have been an evidentiary hearing in the Superior Court in regard to the defendant's motion to exclude Quinones's testimony, no transcript of such a hearing is in the record. The defendant bears the burden of presenting a record that is adequate for appellate review and correcting the record if there is information missing that is necessary to his claims. See *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 349 (2005).

the second examination will be no different"). Moreover, it is clear that the defendant's attorney knew that the defendant was committed pursuant to G. L. c. 123A, which contains clear guidelines as to the role of the qualified examiners' reports in the commitment proceedings. See G. L. c. 123A, §§ 13, 14. Cf. *Estelle* v. *Smith, supra* at 470-471 ("Defense counsel . . . were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and defendant was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed") (footnote omitted); *Commonwealth* v. *Contos*, 435 Mass. 19, 25 (2001) ("[T]here was no misconduct in the Commonwealth's failure to notify counsel [of the examination] because counsel was aware of the order for the examination and the purpose of the examination. Defense counsel was on notice that an examination would occur imminently because of the upcoming trial . . .").

2. *Judge's findings.* The defendant argues that the trial judge's finding that he is a sexually dangerous person is clearly erroneous. Specifically, he argues that although there was evidence from which the trial judge could have made findings that the defendant suffered from pedophilia as defined in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV), the judge did not make findings that his pedophilia constituted a statutory mental abnormality. The judge's findings were not clearly erroneous.

Weighing and crediting the testimony of witnesses during proceedings under G. L. c. 123A "are for the trier of fact, and we will not substitute our judgment for that of the trier of fact." *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 291 (2004), quoting *Hill, petitioner*, 422 Mass. 147, 156, cert. denied, 519 U.S. 867 (1996). Under G. L. c. 123A, § 1, the definition of a sexually dangerous person includes any person who has been "convicted of . . . a sexual offense and who suffers from a mental abnormality[11] or personality disorder which makes the

---

[11]A mental abnormality is defined as "a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a

person likely to engage in sexual offenses if not confined to a secure facility."

At trial, there was testimony detailing the sexual offenses that the defendant committed against two of his female relatives, one in 1985 and one in 1992. Each was eight years old at the time of the offense against her. In addition, the two qualified examiners testified for the Commonwealth. Both diagnosed the defendant with pedophilia[12] and a personality disorder not otherwise specified, with antisocial traits.[13] They testified that the defendant's diagnosis met the statutory criteria under G. L. c. 123A. Experts for the defendant testified that he was not a sexually dangerous person under G. L. c. 123A.

At the conclusion of the trial, the judge made findings based on the evidence presented at trial. Specifically, she found that the defendant had "the mental abnormality of being a pedophile,"[14] which had not been treated. She noted that all of the experts agreed that pedophilia is a chronic condition, and that the defendant fit the criteria for that condition pursuant to the DSM-IV. Although the judge did not find that the defendant suffered from a personality disorder, she concluded that the finding of pedophilia was sufficient to cause him to be likely to reoffend. Based on these findings, as well as the defendant's conviction of two or more sexual offenses, the judge concluded that the defendant was a sexually dangerous person who, if not confined, would be likely to reoffend.

3. *Timeliness of filing of trial petition.* Prior to trial, the defendant filed a motion to dismiss the trial petition because it had not been filed within the statutory time period. See G. L. c. 123A, § 14 (*a*). The motion was denied. On appeal, the de-

---

manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." G. L. c. 123A, § 1.

[12]Pedophilia was defined at trial as "recurrent, intense sexual arousing fantasies, sexual urges or behaviors involving sexual activity with a prepubescent child or children under the age of thirteen," over a period of six months.

[13]Both qualified examiners stated that the defendant did not fit the criteria for antisocial personality disorder because there was no evidence of conduct disorder with onset before the age of fifteen years.

[14]The defendant acknowledges that the judge made this specific finding, noting that "[t]he judge ruled that defendant suffered from the mental abnormality of pedophilia."

fendant argues that because the trial petition was filed before the qualified examiners' reports were docketed, it should have been dismissed.

General Laws c. 123A, § 14 (*a*), provides that the Commonwealth's petition for trial "shall be made within 14 days of the filing of the report of the two qualified examiners." In *Commonwealth* v. *Gross*, 447 Mass. 691, 698 (2006), we held that the term "within" in the context of this provision means that "the petition for trial must be filed within fourteen days of and *after* the filing of the qualified examiners' reports." Here, the qualified examiners' reports were not docketed until August 16, 2003, which was one day after the trial petition was received by the court. However, the record indicates that the Commonwealth was proceeding based on the completion of the qualified examiners' reports. In these narrow circumstances, we conclude that dismissal was not warranted. We emphasize that the statute contemplates receipt of the reports of the qualified examiners followed by a decision to go forward by the Commonwealth.

Unlike *Commonwealth* v. *Gross, supra*, where the Commonwealth never filed a petition for trial, but claimed that the initial commitment petition filed pursuant to G. L. c. 123A, § 12 (*b*), satisfied the § 14 (*a*) trial petition requirement, *id.* at 692, 697, here the Commonwealth did file a § 14 (*a*) trial petition that stated that the qualified examiners had already submitted their evaluations to the court.

4. *Ineffective assistance.* The defendant contends that trial counsel's advice not to testify at trial constituted ineffective assistance of counsel, relying on *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).[15] We need not decide whether the *Saferian* standard applies to proceedings under G. L. c. 123A because for purposes of this appeal the Commonwealth agrees that it does, see *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct.

---

[15]The defendant's ineffective assistance argument is raised for the first time on appeal. Generally, such claims require fact finding and are best brought in a motion for a new trial. *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct. 109, 115 (2006). Here, however, we can resolve the defendant's claim based on the trial record. See *id.* ("we will hear a claim of ineffective assistance of counsel on direct appeal when the factual basis of the claim appears indisputable, as here, on the trial record, and the issues do not implicate any factual questions more appropriately resolved by the trial judge").

Commonwealth *v.* Sargent.

109, 115 (2006) (reviewing claim of ineffective assistance under G. L. c. 123A according to *Saferian* standard), and because in applying this standard we conclude that there was no ineffective assistance of counsel.

Under *Commonwealth* v. *Saferian, supra,* the defendant must demonstrate that there "has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and if that is found, the defendant must show that such behavior "has likely deprived the defendant of an otherwise available, substantial ground of defence." An attorney's decision "not to call the defendant will not be gainsaid absent a showing that the defendant's own testimony would have materially assisted the defense." *Commonwealth* v. *Burgess,* 434 Mass. 307, 318 (2001).

The defendant claims that if he had testified, he would have sought to introduce his relapse prevention plan, a transition plan, the GED he obtained in prison, and certificates showing that he took various college and prison courses. However, he acknowledges that these items were referred to in trial testimony. They were also discussed in documents that were introduced in evidence. He does not point to any advantage that he would have obtained from testifying to this himself rather than from eliciting it from other witnesses. The defendant has not demonstrated that his testimony would have materially assisted the defense.

*Conclusion.* For the reasons set forth above, we affirm the order of the Superior Court.

*So ordered.*