NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-947

ANTONIO MEDEROS, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Between 1989 and 2000, the petitioner, Antonio Mederos, was convicted of numerous sexual offenses and subsequently was committed to the Massachusetts Treatment Center (MTC) as a sexually dangerous person.  He has filed two prior petitions for discharge pursuant to G. L. c. 123A, § 9, which were not successful.[1]  The petition underlying this appeal was filed on December 5, 2018.  Following a trial in the Superior Court, a jury found that the petitioner remained sexually dangerous.  On appeal, the petitioner challenges the sufficiency of the evidence and claims that the Commonwealth failed to meet its burden of proof to establish that he suffers from a mental abnormality or personality disorder that produces in him a

_____

[1] Two panels of this court affirmed those judgments in unpublished decisions.  See Mederos, petitioner, 88 Mass. App. Ct. 1116 (2015), and 99 Mass. App. Ct. 1142 (2021).  The Supreme Judicial Court denied further appellate review on both matters. See 473 Mass. 1110 (2016), and 488 Mass. 1106 (2021).

general lack of ability to control his sexual impulses. However, because the petitioner did not file a motion for a directed verdict at the close of the Commonwealth's case or at the close of all the evidence on this ground, the issue is waived. See McHoul, petitioner, 445 Mass 143, 157 (2005). Thus, we review the petitioner's claim under the substantial risk of a miscarriage of justice standard. See R.B., petitioner, 479 Mass. 712, 717-718 (2018). We have conducted a careful review of the record and conclude that there was ample evidence to support the jury's verdict. We therefore affirm the judgment.[2]

Background. We need not provide a detailed description of the petitioner's history of sexual offenses and misconduct as that history has been adequately described by the parties and in prior unpublished memorandum and orders issued by different panels of this court.[3] It suffices to note that the petitioner was convicted of multiple sexual offenses against a fourteen year old girl in 1989, three female children in 1992, his fourteen year old son in 1997, and an adult woman in 1999. Upon concluding his last term of incarceration, the petitioner was

---

[2] We note that our conclusion would be the same even if the petitioner had preserved his claim by moving for a directed verdict.

[3] See footnote one.

2

determined to be a sexually dangerous person and was civilly committed to the MTC.

As required by G. L. c. 123A, § 9, the petitioner was examined by two qualified examiners in connection with his petition, Dr. Kaitlyn Peretti, Psy.D., and Dr. Katrina Colistra, Psy.D., both of whom testified at trial and opined that the petitioner remained a sexually dangerous person. In addition, Dr. Gregg Belle, Ph.D., who testified as a member of the Community Access Board (CAB), offered his expert opinion that the petitioner remained a sexually dangerous person. Dr. Belle also related that the other four psychologists who are members of the CAB unanimously agreed that the petitioner remained a sexually dangerous person. All three experts testified that the petitioner met the criteria for a statutorily defined personality disorder as that term is defined by G. L. c. 123A, § 1. Doctors Peretti and Colistra diagnosed the petitioner with antisocial personality disorder. Dr. Belle and the four members of CAB diagnosed the petitioner with other specified personality disorder with antisocial traits. As explained by the experts at trial, the presence of antisocial personality disorder and antisocial traits is a risk factor for sexual offense recidivism. Dr. Belle further testified that he and the other CAB members unanimously opined that the petitioner has a statutory mental abnormality and a clinical diagnosis of

3

unspecified paraphilic disorder as defined in the Diagnostic and Statistical Manual of Mental Disorders (5th ed.).

The Commonwealth also presented evidence that the petitioner has exhibited antisocial traits in a variety of circumstances throughout his childhood and as an adult as demonstrated by his extensive nonsexual criminal history, which includes convictions for various motor vehicle violations, assault and battery on a police officer, and assault by means of a dangerous weapon. In addition, around the time of filing his § 9 petition, the petitioner was accused, and later convicted, of crimes related to his manufacturing a knife and providing it to another MTC patient, who intended to commit murder and escape. The petitioner also exhibited antisocial behaviors at the MTC and received a number of behavioral reports for fighting, aggressiveness, possessing sexualized pictures, and touching another male MTC patient. At the time of trial, the petitioner had not progressed in sex offender treatment and, at one point, was suspended from treatment altogether due to his lack of participation and negative behavior.

The petitioner called two expert witnesses, Dr. Eric Brown, Psy.D., and Dr. Leonard Bard, Ph.D., both of whom opined that the petitioner was not sexually dangerous. An immigration attorney, a probation officer, and two released sex offenders

4

testified on the petitioner's behalf with regard to his plans for re-entry into the community.

Discussion. At a trial on a § 9 petition for discharge, the Commonwealth bears the burden of proving that the petitioner continues to be a sexually dangerous person. See Hill, petitioner, 422 Mass. 147, 156, cert. denied, 519 U.S. 867 (1996). A "sexually dangerous person" is defined as follows:

> "[A]ny person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

G. L. c. 123A, § 1.

The petitioner does not dispute that he committed several sexual offenses against multiple victims, including his son, that he was previously adjudicated a sexually dangerous person, or that he has a history of nonsexual criminal offenses. He claims that, despite his prior conduct, the Commonwealth failed to prove that he suffers from a "'mental illness, abnormality,

5

or disorder' that causes [him] to have 'serious difficulty in controlling [his] behavior'" (citation omitted). Johnstone, petitioner, 453 Mass. 544, 549 (2009).

Viewed in the light most favorable to the Commonwealth, see Miller, petitioner, 71 Mass. App. Ct. 625, 635 (2008), the testimony of the Commonwealth's experts coupled with their reports were sufficient to satisfy the Commonwealth's burden to prove beyond a reasonable doubt that the petitioner suffers from a disorder such that he lacks control over his behavior and therefore is likely to reoffend sexually if released. In addition, contrary to the petitioner's assertion, the fact that he offered contrary expert opinions is of no consequence in determining whether the Commonwealth met its burden. Nor is it significant that some evidence -- including his age at the time of trial, sixty-five years old, or his relatively low score of a five on the Static-99R, "an actuarial tool, designed to predict the recidivism risk of sexual offenses," Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017) -- established a reduced risk to reoffend sexually if released. Although the jury were entitled to consider this evidence, it could also disregard it. See Commonwealth v. Sargeant, 449 Mass. 576, 583 (2007) ("Weighing and crediting the testimony of witnesses during proceedings under G. L. c. 123A are for the trier of fact, and we will not

substitute our judgment for that of the trier of fact" [quotation and citations omitted]).

Judgment affirmed.

By the Court (Vuono, Shin &
  Smyth, JJ.[4]),

Clerk

Entered:  April 6, 2026.

---

[4] The panelists are listed in order of seniority.