# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of the Care and Treatment of Jeffrey Allen Chapman, Appellant.

Appellate Case No. 2014-001181

Appeal From Greenville County
The Honorable Robin B. Stilwell, Circuit Court Judge

Opinion No. 27705
Heard May 17, 2016 – Filed February 15, 2017

**AFFIRMED**

Appellate Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan M. Wilson and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, both of Columbia, for Respondent.

**JUSTICE HEARN:** A Greenville County jury found Jeffrey Chapman met the statutory definition of a sexually violent predator (SVP) as set forth in South Carolina's Sexually Violent Predator Act (the Act),[1] and the trial court subsequently signed an order to civilly commit Chapman. In this direct appeal, Chapman presents a novel issue of law related to the right to counsel in SVP

---

[1] *See generally* S.C. Code Ann. §§ 44-48-10 to -170 (2002 & Supp. 2014); *see also* S.C. Code Ann. § 44-48-30(1) (defining an SVP as a person who "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment" and who has a qualifying sexually violent conviction).

proceedings. We hold that persons committed as SVPs have a right to the effective assistance of counsel, and they may effectuate that right by seeking a writ of habeas corpus. Therefore, although we affirm Chapman's commitment on issue preservation grounds, he may reassert his ineffective assistance of counsel claims in a future habeas proceeding.

## FACTUAL/PROCEDURAL BACKGROUND

In 2005, Chapman pled guilty to one count of lewd act on a minor, involving a ten-year-old female. He was sentenced to fifteen years' imprisonment, suspended to time served and five years' probation. Approximately five years later, Chapman's probation was revoked due to "technical violations," including a failure to comply with his curfew and GPS monitoring requirements, and a circuit court judge ordered him imprisoned for five years of his original sentence.

In 2013, prior to Chapman's release from prison, the State filed a petition under the Act seeking Chapman's commitment as an SVP. In support of its petition, the State cited Chapman's four prior convictions involving sexual assaults on women, as well as the conviction for lewd act on a minor.

At Chapman's commitment trial,[2] the State presented testimony from Dr. Marie Gehle, the chief psychologist at the South Carolina Department of Mental Health, who the court qualified as an expert in forensic and clinical psychology and SVP mental health evaluations. Dr. Gehle testified she reviewed Chapman's incarceration records, military records, and criminal history, including

---

[2] Before opening statements, the trial court instructed the jury about the Act and fully charged the jury on the law applicable to SVP cases. The trial court did not re-charge the jury at the conclusion of the trial. *See* Rule 51, SCRCP ("[T]he court shall instruct the jury after the arguments are completed."). We note trial courts must charge the jury on the legal issues that apply to the evidence adduced at trial. *Clark v. Cantrell*, 339 S.C. 369, 390, 529 S.E.2d 528, 539 (2000) ("When instructing the jury, the trial court is required to charge only principles of law that apply to the issues raised in the pleadings *and developed by the evidence* in support of those issues." (emphasis added)). While preliminary jury charges may aid the jury's understanding of the trial, it is impossible to be prescient with complete accuracy, and therefore jury charges given at the beginning of trial will almost never cover all of the relevant law that will be "developed by the evidence." For this reason, trial courts should reiterate and supplement those charges at the conclusion of a trial. *See* Rule 51, SCRCP.

investigation summaries, witness statements, Chapman's statements, and sentencing sheets. Additionally, Dr. Gehle testified she interviewed Chapman and performed psychological testing, which included completing the Static-99R actuarial risk assessment tool.[3]

In explaining her findings, Dr. Gehle detailed the facts surrounding Chapman's prior sex offenses, including two sexual assault convictions in Florida in 1986, an attempted second-degree rape conviction in North Carolina in 1991, a third-degree criminal sexual conduct conviction in South Carolina in 1992, an indecent exposure conviction in South Carolina in 1997, and a lewd act on a minor conviction in South Carolina in 2005. Dr. Gehle stated Chapman's behavior in each instance appeared to be impulsive and violent. Moreover, she testified Chapman took no responsibility for his actions, instead claiming the convictions were the result of consensual sex or fabrication by the victims.

From her review of Chapman's records, psychological tests, and personal interview, Dr. Gehle concluded Chapman suffered from biastophilia,[4] anti-social personality disorder, and substance abuse disorder. As a result of the interplay of the characteristics of those diagnoses, Dr. Gehle opined that Chapman posed a high risk of reoffending.

In contrast, Chapman presented testimony from several personal acquaintances, each of whom testified to Chapman's good character. The witnesses stated that after Chapman's last conviction, his life and attitude had changed drastically as a result of him attending church. Chapman testified as well, stating drugs and alcohol had a significant effect on his life since his teenage years, and blaming substance abuse for most of his bad actions.

Chapman's final witness was Dr. David Price, a psychologist, who the court qualified as an expert in clinical and forensic psychology. Dr. Price testified he disagreed with Dr. Gehle's diagnoses of biastophilia and anti-social personality disorder. In part, Dr. Price stated his disagreement stemmed from Dr. Gehle's application and interpretation of the psychological tests Chapman completed,

---

[3] Dr. Gehle explained the Static-99R is an actuarial tool consisting of ten questions that "have been proven significantly related to sexual offending."

[4] According to Dr. Gehle, biastophilia occurs "when a person experiences recurrent, intense, sexually arousing fantasies, urges or behaviors involving corrosive sexual acts with non-consenting persons over a period of at least six months."

including the Static-99R test, because the test had been discredited to some degree in professional circles.

Throughout the two-day trial, Chapman's counsel did not make any motions, including a motion for a directed verdict or JNOV. Further, Chapman's counsel objected only once, during Dr. Price's voir dire.

Ultimately, the jury found Chapman met the statutory definition for an SVP, and the trial court ordered Chapman's commitment. Chapman appealed, and the Court certified the appeal pursuant to Rule 204(b), SCACR.

## ISSUES PRESENTED

I.    Does a person committed as an SVP have a due process right to effective assistance of counsel?

II.   If a person committed as an SVP has a right to effective assistance of counsel, when during his appeal may he raise his trial counsel's perceived errors?

III.  If a person committed as an SVP has a right to effective assistance of counsel, what standard should a court use to evaluate counsel's performance?

IV.   Did trial counsel's failure to object to various alleged errors during trial violate Chapman's right to effective assistance of counsel?

## STANDARD OF REVIEW

"Questions of statutory construction are a matter of law." *Boiter v. S.C. Dep't of Transp.*, 393 S.C. 123, 132, 712 S.E.2d 401, 405 (2011). The Court reviews questions of law de novo. *Milliken & Co. v. Morin*, 399 S.C. 23, 30, 731 S.E.2d 288, 291 (2012).

Moreover, on appeal from a case tried before a jury in an action at law, appellate courts may not disturb the jury's factual findings "unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings." *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976). Thus, this Court's jurisdiction in those cases extends only to the correction of errors of law. *In re Care & Treatment of Gonzalez*, 409 S.C. 621, 628, 763 S.E.2d 210, 213 (2014).

## LAW/ANALYSIS

## I.   RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

Chapman argues because the Act provides him a right to assistance of counsel during all stages of SVP proceedings, he necessarily has a right to effective assistance of counsel during the proceedings.  We agree.

The United States Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  *Addington v. Texas*, 441 U.S. 418, 425 (1979); *accord Vitek v. Jones*, 445 U.S. 480, 491–92 (1980) (plurality opinion).  Moreover, the Supreme Court found that to satisfy due process, prisoners suffering from a mental disease or defect requiring involuntary commitment must be provided with independent assistance during the commitment proceeding.  *Vitek*, 445 U.S. at 496–97; *id.* at 500 (Powell, J., concurring).  In accordance with these directives, section 44-48-90 of the South Carolina Code provides, "At all stages of the proceedings under [the Act], a person subject to [the Act] is entitled to the assistance of counsel, and if the person is indigent, the court must appoint counsel to assist the person."  S.C. Code Ann. § 44-48-90(B).

We have previously recognized section 44-48-90 provides a statutory right to counsel distinct from the Sixth Amendment right to counsel afforded in criminal proceedings.  *In re Care & Treatment of McCoy*, 360 S.C. 425, 427, 602 S.E.2d 58, 59 (2004); *In re Care & Treatment of McCracken*, 346 S.C. 87, 96, 551 S.E.2d 235, 240 (2001).  However, given the significant due process implications inherent in civil commitments, we find section 44-48-90's right to counsel is not merely a statutory right, but also a constitutional one arising under the Fourteenth Amendment and the South Carolina Constitution.[5]  *Cf. Vitek*, 445 U.S. at 496–97; *In re Care & Treatment of Ontiberos*, 287 P.3d 855, 864–65 (Kan. 2012) (examining the three due process factors espoused in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), and concluding there is a constitutional right to counsel arising under the Fourteenth Amendment and the state constitution with regards to SVP commitment proceedings); *Jenkins v. Dir. of the Va. Ctr. for Behavioral Rehab.*, 624 S.E.2d 453, 460 (Va. 2006) (holding that because of the "substantial liberty interest at stake in an involuntary civil commitment based on Virginia's

---

[5] *See* U.S. Const. amend. XIV, § 1 (prohibiting states from "depriv[ing] any person of life, liberty, or property, without due process of law"); S.C. Const. art. I, § 3 (same).

[SVP] Act," persons subject to SVP proceedings have a constitutional right to counsel arising under the Fourteenth Amendment and the state constitution).[6] Lest the right ring hollow, we further hold this right to counsel is necessarily a right to effective counsel. *Accord Smith v. State*, 203 P.3d 1221, 1232–33 (Idaho 2009).[7]

Accordingly, because the Act provides Chapman with a right to counsel, he consequently has a right to effective assistance of that counsel during his SVP proceedings.

## II. TIMING OF RAISING INEFFECTIVE ASSISTANCE CLAIMS

Chapman next asserts as the Act currently stands, there is no avenue in which persons committed as SVPs may raise ineffective assistance of counsel claims. Therefore, he argues, he should be able to raise his ineffective assistance claims on direct appeal. In response, the State contends Chapman may assert an ineffective assistance claim through a common law habeas proceeding. We agree with the State that, as with all unlawful confinement claims, Chapman may assert his claims that he is improperly in custody—whether due to his counsel's ineffectiveness or otherwise—via a future habeas proceeding. *See* Dallin H. Oaks, *Habeas Corpus in the States: 1776–1865*, 32 U. Chi. L. Rev. 243, 244 (1964–65) (explaining although habeas corpus has ceased to be a significant remedy in most civil litigation, it remains important in the civil commitment context).

Dating from as early as the 14th century, the right to petition a court for relief from unlawful confinement has been heralded as the highest safeguard of an individual's liberty. Literally, the phrase *habeas corpus* means "you should have the body." *Habeas corpus*, The American Heritage Dictionary (2d ed. 1985). South Carolina has recognized the writ of habeas corpus since 1787, the same year

---

[6] To the extent *McCoy* and *McCracken* implied that the only right to counsel under the Act was a statutory one, they are hereby modified.

[7] In fact, courts considering this issue have unanimously determined that in civil commitment proceedings where there is a right to counsel, there is a consequent right to effective counsel. *See, e.g.*, *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 384 (Alaska 2007); *Smith*, 203 P.3d at 1232–33; *In re Detention of Crane*, 704 N.W.2d 437, 438 n.3 (Iowa 2005); *Ontiberos*, 287 P.3d at 863; *Commonwealth v. Ferreira*, 852 N.E.2d 1086, 1091 (Mass. App. Ct. 2006); *In re Mental Health of K.G.F.*, 29 P.3d 485, 491 (Mont. 2001); *State v. Campany*, 905 N.Y.S.2d 419, 425–26 (App. Div. 2010); *In re Commitment of Hutchinson*, 421 A.2d 261, 264 (Pa. Super. Ct. 1980); *Jenkins*, 624 S.E.2d at 460.

the writ was adopted into our federal constitution. *See* Oaks, *supra*, at 247–48; *McMullen v. City Council of Charleston*, 1 S.C.L. (1 Bay) 46 (1787).[8] This extraordinary writ, though seldom granted, is nonetheless available to all individuals who believe they are wrongly confined, following the exhaustion of their direct appeal and other collateral remedies. As the State has acknowledged, this Court could not deny an individual, such as Chapman, the right to file a writ of habeas corpus seeking relief from his detention. *See* S.C. Const. art. I, § 18 ("The privilege of the writ of *habeas corpus* shall not be suspended unless when, in case of insurrection, rebellion or invasion, the public safety may require it.").

Notably, in the criminal context, the General Assembly removed certain claims from the immediate province of habeas relief. In doing so, the legislature provided an alternative procedure by which criminal defendants must assert claims regarding ineffective assistance of counsel: post-conviction relief (PCR). *See generally* S.C. Code Ann. §§ 17-27-10 to -160 (2014 & Supp. 2015) (the PCR Act); Blume, *supra*, at 238–44 (detailing the history of the post-conviction process, from its origins in habeas relief through the General Assembly's enactment of the PCR Act). Thus, on direct appeal, this Court will not consider claims involving ineffective assistance of counsel. *See State v. Carpenter*, 277 S.C. 309, 309–10, 286 S.E.2d 384, 384 (1982) (per curiam). Rather, those claims are limited to review during PCR. Following such review, a criminal defendant may file a petition for habeas corpus as a means of seeking final relief. *Simpson v. State*, 329 S.C. 43, 46, 495 S.E.2d 429, 431 (1998) (per curiam). However, petitions for habeas relief serve only to ensure observance of fundamental constitutional rights that have been overlooked in prior proceedings. *Williams v. Ozmint*, 380 S.C. 473, 477, 671 S.E.2d 600, 602 (2008); *Aice v. State*, 305 S.C. 448, 451, 409 S.E.2d 392, 394 (1991) (stating additional judicial review after PCR is appropriate only when the judicial system has failed a defendant in such a way that to continue his imprisonment without further review would amount to a gross miscarriage of

---

[8] Although South Carolina did not formally adopt a habeas provision in its state constitution until after the Civil War, it was the only colony to codify the writ by the time of the American Revolution. John H. Blume, *An Introduction to Post-Conviction Remedies, Practice and Procedure in South Carolina*, 45 S.C. L. Rev. 235, 238 (Winter 1994). In fact, many scholars contend most states omitted a habeas provision from their early state constitutions not because they considered it unimportant, but because they thought a formal assertion of the writ was unnecessary given how solidly established the right to habeas corpus was in the colonies. Oaks, *supra*, at 248, 249.

justice). As a result, habeas relief is only available when other remedies, such as PCR, are inadequate or unavailable. *Hamm v. State*, 403 S.C. 461, 464, 744 S.E.2d 503, 504 (2013).

With regards to a civil commitment under the Act, Chapman is correct in stating there is no statutory procedure, such as PCR, that would presently allow persons committed as SVPs to effectuate their right to the effective assistance of counsel. Regardless, we decline to address the merits of his claims on direct appeal for the same reasons we do not address these claims in a criminal direct appeal. *See State v. Felder*, 290 S.C. 521, 522–23, 351 S.E.2d 852, 852 (1986) (quoting *State v. Williams*, 266 S.C. 325, 337, 223 S.E.2d 38, 44 (1976)) (finding in direct appeals, the record rarely contains a factual basis for a claim that counsel's performance was deficient, because it does not reveal counsel's possible strategic explanation (or lack thereof) for taking or omitting the challenged action); *cf. Strickland v. Washington*, 466 U.S. 668, 689 (1984) (stating in the criminal context that courts must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Rather, an evidentiary hearing similar to a PCR hearing is necessary to explore the strategy underlying counsel's actions and omissions during an SVP trial.

Because there is no existing statutory procedure providing for such a hearing, we find Chapman's claims regarding ineffective assistance of counsel akin to other habeas claims, in that the existing relief for the claims is either inadequate (due to the lack of a fully developed record) or unavailable (due to the absence of a specified procedure in which to assert the claims). Thus, we agree with the State that persons committed under the Act may pursue their unlawful custody claims, including ineffective assistance of counsel claims, in habeas proceedings.

We emphasize that, in recognizing Chapman's right to file a habeas claim for ineffective assistance of counsel, we do not create a new framework out of whole cloth. Rather, as stated, *supra*, habeas relief is uniformly available to those imprisoned in violation of the law. *See Harrington v. Richter*, 562 U.S. 86, 91 (2011). Thus, our holding today merely declines to divest Chapman of his fundamental right to seek relief from unlawful confinement.

We note that in general, there is no right to counsel in habeas proceedings, whether criminal or civil. Thus, as a practical matter, a person committed as an SVP would ordinarily be required to assert an ineffective assistance of counsel claim in a habeas proceeding *without the assistance of counsel*. We find this result would be not only inequitable, but also the functional equivalent of denying SVPs

the right to effective assistance of counsel.[9]  As discussed, *supra*, the General Assembly provides persons subject to commitment under the Act with a right to counsel at "all stages of the proceedings."  S.C. Code Ann. § 44-48-90.  Due to the unique unfairness of requiring SVPs to pursue ineffective assistance of counsel claims without the assistance of counsel, this language must be construed as providing persons committed under the Act with a right to counsel during their first habeas proceeding.  *Cf. Odom v. State*, 337 S.C. 256, 261, 523 S.E.2d 753, 755 (1999) (explaining successive PCR applications alleging ineffective assistance of counsel are disfavored because they allow an applicant "more than one bite at the apple," and giving examples of "rare procedural circumstances" in which a court may entertain a successive application, such as if the court dismissed the first PCR application without providing the applicant the assistance of legal counsel (citation omitted) (internal quotation marks omitted)).

We recognize this portion of our holding is perhaps an unforeseen application of the statutory language.  Nonetheless, the General Assembly provided SVPs with a right to counsel, which cannot be merely a superficial right.  *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.");  *see also Tempel v. S.C. State Election Comm'n*, 400 S.C. 374, 378, 735 S.E.2d 453, 455 (2012) ("This Court will not construe a statute in a way which leads to an absurd result or renders it meaningless.");  *CFRE, L.L.C. v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (stating in reading a statute as a whole and in harmony with its purpose, the Court must read the statute in a manner such that "'no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous, for the General Assembly obviously intended the statute to have some efficacy, or the legislature would not have enacted it into law'" (internal citations omitted) (internal marks omitted)).  While the State conceded this during oral argument, unquestionably, the General Assembly may reevaluate an SVP's right to counsel and set forth a more comprehensive statutory scheme to address this issue.

## III.   STANDARD TO MEASURE EFFECTIVENESS

Chapman finally argues the ordinary standard for granting habeas relief

---

[9] *Cf.* S.C. Code Ann. § 17-27-60 (providing indigent PCR applicants with a right to counsel to pursue their PCR claims); Rule 71.1(d), (g), SCRCP (providing indigent PCR applicants with counsel if their application presents a question of law or fact that will require a hearing, or if their application for relief is denied).

should not apply to ineffective assistance of counsel claims arising from SVP proceedings.[10] We agree, and hold the more appropriate standard in these instances is the two-prong *Strickland* standard used to vindicate a criminal defendant's Sixth Amendment right to counsel. *See Cherry v. State*, 300 S.C. 115, 117–18, 386 S.E.2d 624, 625 (1989) (describing the *Strickland* standard as requiring a PCR applicant to prove counsel's deficient performance, and the resulting prejudice).

An SVP's right to counsel arises from a constitutional right to due process similar to the rights attendant to a criminal trial.[11] *Ontiberos*, 287 P.3d at 867, 868; *see also Jones v. State*, 477 N.E.2d 353, 357 (Ind. Ct. App. 1985) ("In considering what constitutes effective representation, it seems reasonable to look to criminal standards for guidance. Such an approach seems justified inasmuch as the allegedly mentally ill person's liberty is at stake."); *Jenkins*, 624 S.E.2d at 460. We further note a majority of jurisdictions use the *Strickland* standard in evaluating ineffective assistance claims in a civil commitment context, "regardless of whether that court held that the person's right to effective counsel arose from statute or the constitution." *Ontiberos*, 287 P.3d at 867 (collecting cases).

Thus, in our state and others, *Strickland* is a well-known standard applied in an extensive body of case law in the criminal *and* civil contexts. *See In re Detention of T.A.H.-L.*, 97 P.3d 767, 771 (Wash. Ct. App. 2004). Indeed, the *Strickland* standard is the one most familiar to judges and attorneys, and thus results in a more consistent application in our state courts. *See Ontiberos*, 287 P.3d at 867 (citing *T.A.H.-L.*, 97 P.3d at 771). Accordingly, we find using the

---

[10] *See generally Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990) (stating a court will normally only issue a habeas writ under limited circumstances, when there has been a violation that constitutes a denial of fundamental fairness shocking to the universal sense of justice).

[11] Justice Few would have us disregard both parties' recognition that habeas corpus is available to anyone, including Appellant, who wishes to challenge the legality of his or her confinement. The dissenting opinion mistakenly portrays the majority's actions as improperly invading the legislature's role. We would respectfully remind the dissent that this Court is tasked with interpreting and applying the law as adopted by the legislature. A necessary part of this duty is ensuring that the law comports with all constitutional requirements. Accordingly, we must avoid any application of law that does not pass constitutional muster. Were we to accept the dissent's contention that we are somehow encroaching on the legislature, we would be forced to adopt an interpretation of the law that does not satisfy due process.

*Strickland* standard to evaluate ineffective assistance claims—regardless of the fact these claims must be asserted in habeas proceedings—will most consistently ensure an SVP's ability to exercise his right to the effective assistance of counsel.

## IV.    MERITS OF INEFFECTIVE ASSISTANCE CLAIMS

As Chapman conceded in his briefs and during oral argument, none of his ineffective assistance claims are preserved for appellate review because trial counsel failed to object to any of the alleged errors. *See Buist v. Buist*, 410 S.C. 569, 574, 766 S.E.2d 381, 383 (2014). Accordingly, we affirm his commitment as an SVP pursuant to Rule 220, SCACR. Our decision is without prejudice to his ineffective assistance claims, and Chapman may reassert these claims during a future habeas proceeding.

## CONCLUSION

We cannot construe the Act in a manner that does not recognize an SVP's constitutional right to the effective assistance of counsel. Necessarily, if it is to have any meaning, an SVP must have an avenue to effectuate that right. Under the current framework of the Act, we hold the appropriate forum to assert the right to effective assistance of counsel is the long-recognized safeguard of due process: habeas relief.

Based on the foregoing, we affirm Chapman's commitment as an SVP.

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, J., and Acting Justice Costa M. Pleicones, concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** This is a direct appeal from an action at law.[12] The Constitution of South Carolina sets forth the jurisdiction of the Supreme Court in such a case: "The Supreme Court shall constitute a court for the correction of errors at law under such regulations as the General Assembly may prescribe." S.C. CONST. art. V, § 5. *See Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976) ("Article V, § 5 of our Constitution . . . sets forth the jurisdiction of this Court."). Under article V, section 5, the Supreme Court has no power in this case except to correct errors of law made by the trial court. *See In re Care & Treatment of Gonzalez*, 409 S.C. 621, 628, 763 S.E.2d 210, 213 (2014) (stating in an appeal from a jury verdict in an SVP trial, "the jurisdiction of the appellate court extends merely to the correction of errors of law"); *Lozada v. S.C. Law Enf't Div.*, 395 S.C. 509, 512, 719 S.E.2d 258, 259 (2011) ("When reviewing an action at law, our scope of review is limited to the correction of errors of law."); *Townes Assocs.*, 266 S.C. at 85, 221 S.E.2d at 775 ("In an action at law, on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to the correction of errors of law . . . .").

The majority opinion recites this limitation on our power—citing *Gonzalez*—but then ignores its own words and projects this Court beyond our constitutional jurisdiction by writing procedural and substantive rules of law that have nothing to do with any error of law made by the trial court. These new rules do not concern the trial court's handling of this SVP trial, nor do they govern how a future trial court will conduct an SVP trial. Rather, these new rules establish a procedural and substantive scheme for resolving a completely different category of lawsuits that have never been filed. The majority's new rules to govern these future lawsuits violate the limits on our power set forth in article V, section 5 as interpreted by this Court in *Gonzalez*, *Lozada*, and *Townes Associates*, and because of that, the new rules also violate the separation of powers requirement set forth in article I, section 8 of the Constitution of South Carolina.

It requires no justification for a court to honor the constitutional limitation on judicial power—it is the law. In this case, however, the justification is clear. First, the only procedural and substantive framework in South Carolina—until now—to protect a litigant's right to effective counsel is the South Carolina Uniform Post-Conviction Relief Act enacted by our Legislature. *See* S.C. Code Ann. §§ 17-27-10 to -160 (2014); *see also* 28 U.S.C. § 2255 (2016) (Federal

---

[12] The majority states in its first paragraph this is a "direct appeal." We have previously held an SVP trial is an action at law. *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 131, 568 S.E.2d 338, 342 (2002).

custody; remedies on motion attacking sentence). Second, this Court has previously held, "The purpose of habeas corpus is to test the legality of the prisoner's present detention," and, "The only remedy that can be granted is release from custody." *Gibson v. State*, 329 S.C. 37, 40, 495 S.E.2d 426, 427 (1998) (citing *McCall v. State,* 247 S.C. 15, 18, 145 S.E.2d 419, 419 (1965)). Under *Gibson* and *McCall*, the only remedy available for a finding of ineffective counsel would be to release from custody a person found by a jury to be a sexually violent predator—because the courts do not have the power to grant a new trial.[13] Third, the majority's provision that the court must appoint—and the State must pay—counsel to represent the SVP in the effective counsel proceeding violates section 14-1-235 of the South Carolina Code (2017), which provides, "A judge, court, or court official shall not appoint an attorney to represent a party in a civil action unless the authority to make the appointment is provided specifically by statute."

Finally, creating a procedural and substantive scheme for future litigation of effectiveness of counsel in an SVP trial is particularly inappropriate for judicial action. To illustrate this point, I pose a few questions. First, is there any difference between the majority's new scheme and the annual review proceedings provided in section 44-48-110 of the South Carolina Code (Supp. 2016)? If not—or if the difference is only slight—can the right of effective counsel in the initial commitment proceeding reach the constitutional dimension on which the majority relies? Second, does an SVP—by filing a petition for habeas corpus claiming ineffective counsel—waive his right to pursue annual review proceedings, or must

---

[13] In this event it is questionable that SVP proceedings may be reinstituted. The timetable for instituting such proceedings begins long before the person is released from confinement on the original sentence, which will necessarily have passed by the time a circuit court grants habeas corpus. *See* S.C. Code Ann. § 44-48-40(A)(1) (Supp. 2016) (requiring the multidisciplinary team be given "written notice . . . at least two hundred seventy days before" release); S.C. Code Ann. § 44-48-50 (Supp. 2016) (stating the timetable for "forward[ing] a report of the assessment to the prosecutor's review committee" is "within thirty days" of the notice in subsection 44-48-40(A)(1)); S.C. Code Ann. § 44-48-60 (Supp. 2016) (requiring the review committee to determine probable cause "within thirty days of receiving the report"); S.C. Code Ann. § 44-48-70 (Supp. 2016) (requiring the Attorney General to file the petition for SVP confinement "within thirty days of the probable cause determination"). There is no provision in the SVP Act permitting retrial after release from confinement.

the circuit court simultaneously conduct annual review proceedings and effective counsel proceedings?[14]   Third, if the circuit court in annual review proceedings finds no "probable cause exists to believe that the person's mental abnormality or personality disorder has [sufficiently] changed," would that finding moot any ongoing effective counsel proceedings by making a different outcome not reasonably likely under the second prong of *Strickland*?[15]   Fourth, if the circuit court must conduct simultaneous proceedings, is the counsel to be appointed pursuant to the majority opinion permitted to be—or required to be—the same counsel the SVP is entitled to in annual review proceedings pursuant to section 44-

---

[14] Section 44-48-110 requires,

> A person committed pursuant to this chapter *must* have an examination of his mental condition performed once every year. . . .   The annual report *must* be provided to the court which committed the person . . . .   The court *must* conduct an annual hearing to review the status of the committed person. . . .   If the court determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be at large and, if released, is not likely to commit acts of sexual violence, the court *must* schedule a trial on the issue.

*Id.* (emphasis added).

[15] How could a circuit court find prejudice under *Strickland* if the same or another circuit judge has already found in an annual review proceeding that no probable cause exists to believe the SVP is "safe to be at large?"  Further, if the judge in the effective counsel proceeding is a different judge and the annual review judge found no probable cause, is the second judge bound by the rule that "one circuit court judge may not overrule another?"  *Salmonsen v. CGD, Inc.*, 377 S.C. 442, 454, 661 S.E.2d 81, 88 (2008).  Conversely, if the effective counsel trial occurs first and the circuit court finds prejudice, which surely moots the probable cause hearing in the annual review proceedings, would the prospect of an annual review trial then moot any appeal from the effective counsel trial?

48-110?[16]  Finally, there are other civil commitment proceedings as to which the committed person has a statutory right to counsel.  *See* S.C. Code Ann. §§ 44-17-310 to -900 (2002 & Supp. 2016) (Care and Commitment of Mentally Ill Persons Act); § 44-17-530 (2002) (providing "the court shall appoint counsel to represent the person" subject to judicial commitment proceedings).  Does the majority's new scheme apply to those committed persons as well?

Some of these questions may be invalid, and never need to be answered, but some of them are valid, and demand an answer.  Whether these questions deserve answers—and if so what are the answers—are inquiries that courts are uniquely unqualified to complete.  The Legislature, on the other hand, has numerous tools at its disposal to adequately address these and other problems.  All of this forces the question of why this Court should create this new effective counsel scheme, especially when the annual review procedure is already in place pursuant to statute.  *See* § 44-48-110.  Respectfully, the majority has not answered any of these questions.

The majority suggests in footnote eleven that I do not understand this Court's duty to "ensur[e] that the law comports with all constitutional requirements."  I am satisfied that I do understand this duty, and further that I understand we must exercise that duty within the constitutional limitations on our power.  To respond to the majority's suggestion, I will explain how—and when—I think this Court should fulfill its duty to protect the constitutional rights of Chapman and other SVP litigants who claim they have been denied due process because they received ineffective assistance of counsel.

To begin, this Court has never heard an appeal from a circuit court's ruling as to whether an SVP defendant received effective assistance from his attorney.  The trial court made no such ruling in this case.  In fact, I am not aware that any SVP defendant has ever brought such a claim in any South Carolina circuit court.  If an SVP brings such a claim, the first issue the circuit court will face is whether the SVP's right to annual review adequately protects the SVP's due process rights regarding the effectiveness of his counsel.  No court—anywhere—not even the courts from other states cited by the majority—has ever answered that question.

---

[16] "The committed person has a right to have an attorney represent him at the [annual review probable cause] hearing . . . ," and, "At the trial, the committed person is . . . entitled to the benefit of all constitutional protections [i.e., counsel]." § 44-48-110.

If the circuit court in which the claim is brought addresses the SVP's claim, and if the aggrieved party appeals, this Court will then be required to determine whether the circuit court committed any errors of law. Then—when the questions that the majority answers in the abstract are actually contested issues in an appeal before us—we will fulfill our duty to protect the due process rights of SVP litigants, and our responsibility under article V, section 5, by determining whether the trial court committed any errors of law. Until then, we act outside of our constitutional authority if we write rules not necessary to resolve the actual case before us, even though the rules may relate to the constitutional requirement of due process.

My disagreement with the majority is not based on a misunderstanding of our duty to protect the due process rights of our citizens. Rather, my disagreement derives from my resolve to obey the constitutional limitations on our power. As the majority recognizes, "none of [Chapman's] ineffective assistance claims are preserved for review." Under this circumstance, we should affirm without any comment on rules to govern future disputes. Because I believe the law written by the majority in this case goes beyond the constitutional limits on this Court's power and falls within the exclusive province of the Legislature, I respectfully dissent.