# THE STATE OF SOUTH CAROLINA
# IN THE COURT OF APPEALS

In the Matter of the Care and Treatment of Micah A.
Bilton, Appellant.

Appellate Case No. 2017-001464

―――――――――

Appeal From Horry County
William H. Seals, Jr., Circuit Court Judge

―――――――――

Opinion No. 5775
Heard June 16, 2020 – Filed October 14, 2020

―――――――――

## REVERSED AND REMANDED

―――――――――

Appellate Defender David Alexander, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson, and Senior
Assistant Deputy Attorney General Deborah R.J. Shupe,
both of Columbia, for Respondent.

―――――――――

**HEWITT, J.:** The State called one witness during Micah Allen Bilton's trial for
civil commitment as an alleged sexually violent predator. That witness—a
forensic psychologist—was permitted to testify as an expert regarding a
controversial test performed on Bilton she neither administered nor observed. She
also shared the test results with the jury.

The witness had not reviewed the raw data the test produced. She also did not
know whether the full testing protocol used on Bilton had been peer-reviewed.
The expert explained she had confidence in the lab that had performed the test and
she saw no basis for questioning its results. She used these test results as part of

the basis, but not the sole basis, of her opinion that Bilton was a sexually violent predator.

Bilton lodged several objections to this evidence, but we deal only with his argument that the testifying psychologist served as a "conduit" that improperly allowed the jury to consider the out-of-court test, which was inadmissible hearsay, with no baseline demonstration that the test was reliable. We agree. Thus, we reverse Bilton's adjudication as a sexually violent predator and remand for a new trial.

## FACTS

Bilton molested his four-year-old stepsister when he was fifteen and his six-year-old niece when he was seventeen. The first incident resulted in a guilty plea to assault and battery of a high and aggravated nature. The second resulted in a guilty plea to criminal solicitation of a minor.

The State subsequently brought this action seeking Bilton's civil commitment under the Sexually Violent Predator Act. That act is codified at sections 44-48-10 through 44-48-170 of the South Carolina Code (2018). The trial on this civil charge occurred in June 2017. Bilton was twenty-two.

At the start of trial, Bilton moved in limine to prohibit Dr. Amy Swan—the court-appointed evaluator and the State's sole expert—from testifying about a penile plethysmograph or "PPG" test that a third party performed on Bilton at Dr. Swan's request. After a proffer of Dr. Swan's testimony, the circuit court ruled there was a sufficient foundation for her testimony's admission.

When she testified to the jury, Dr. Swan explained that although this PPG documented Bilton's greatest level of sexual arousal was to adult women in a consensual encounter, the test also showed Bilton demonstrated "deviant arousal," the most significant of which was to teen females in a coercive or rape scenario. Dr. Swan also said the test revealed Bilton was aroused in varying scenarios by preschool females, preschool males, grammar school females, and teenage males. Dr. Swan said sexual interest in children, as measured by the PPG, is "the one factor that carries the highest risk for committing another sexual crime."

## ISSUE

Whether the trial court erred in allowing Dr. Swan to testify regarding the PPG test results.

**STANDARD OF REVIEW**

The standard of review for evidentiary rulings is very deferential. "The admission or exclusion of evidence is a matter within the trial court's sound discretion, and an appellate court may only disturb a ruling admitting or excluding evidence upon a showing of a 'manifest abuse of discretion accompanied by probable prejudice.'" *State v. Commander*, 396 S.C. 254, 262–63, 721 S.E.2d 413, 417 (2011) (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 848 (2006)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

**ANALYSIS**

We begin by briefly discussing the statutory law and the test in question before addressing the parties' arguments. The Sexually Violent Predator Act provides that once a court determines there is probable cause, the court must appoint a qualified expert to evaluate whether a particular person is a sexually violent predator. *See* S.C. Code Ann. § 44-48-80(D) (2018). Here, that evaluator—Dr. Swan—ordered Bilton to undergo a PPG test as part of her evaluation. Another person—either Dr. William Burke or someone working at his facility—performed the PPG.

The PPG measures changes in blood flow to the male sex organ while the test subject views a series of visual and auditory stimulants corresponding to different ages, genders, and scenarios. Certain levels of increased blood flow are associated with arousal.

The test is controversial and has been criticized for a lack of standardization and for being subject to manipulation. *See United States v. Rhodes*, 552 F.3d 624, 626–27 (7th Cir. 2009); *United States v. Weber*, 451 F.3d 552, 565 (9th Cir. 2006). It has also been criticized as Orwellian when, as here, the State compels the subject to arouse himself sexually and then forces him to view deviant stimulants so the State can get a sense of the person's pre-dispositions and, potentially, use those pre-dispositions against him. *Weber*, 451 F.3d at 571–72 (Noonan, J., concurring).

Courts have noted that PPGs are routinely used as a tool in treatment programs. *Weber*, 451 F.3d at 562–63 (citing *Berthiaume v. Caron*, 142 F.3d 12, 16 (1st Cir. 1998)). Even so, with limited exceptions we will discuss later, courts have "uniformly" declared that PPG test results are "inadmissible as evidence because

there are no accepted standards for this test in the scientific community." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000).

Bilton frames his challenge as based on due process. He relies chiefly on the fact that Dr. Swan testified regarding the PPG results even though she did not administer the PPG, observe the test's administration, or review the raw data the test generated. Bilton also relies on Dr. Swan's testimony that she did not know whether the set of stimulants Dr. Burke used in Bilton's PPG had been peer-reviewed. Bilton correctly notes that our decision in *State v. McCray* prohibits one expert from serving as a "conduit" for a non-testifying expert's testimony. 413 S.C. 76, 773 S.E.2d 914 (Ct. App. 2015). He says that is what Dr. Swan did here.

The State contends it was appropriate for Dr. Swan to rely on Dr. Burke's work because, as an expert, Dr. Swan is permitted to rely on facts or data that are not themselves admissible in evidence as long as the facts or data are of the type reasonably relied on by experts in the field. *See* Rule 703, SCRE. The State relies chiefly on the fact that the Fifth Edition of the Diagnostic and Statistical Manual (DSM-V)—a publication recognized as authoritative—mentions the PPG as the most thoroughly researched method for providing a physiological indication of someone's sexual attractions and as the method that has been most extensively used to do so. The State also notes Dr. Swan's testimony that she was familiar with Dr. Burke's work, that Dr. Burke uses the same stimulus sets in every PPG test, and that Dr. Burke did not include any notations regarding quality control problems in the report from Bilton's test.

If this was a criminal case, the error would not be debatable. Our decision in *McCray* would be directly on point, as would the U.S. Supreme Court's decisions in *Melendez-Diaz v. Massachusetts*[1] and *Bullcoming v. New Mexico*.[2] These cases prohibit a testifying expert from acting as a "conduit" or "surrogate" for someone else's scientific analysis. Yet, those cases turned on the Sixth Amendment and its Confrontation Clause. We did not find any authority applying the Confrontation Clause to civil commitment proceedings. Indeed, we found cases holding the Sixth Amendment does not apply to these proceedings. *See State v. Floyd Y.*, 2 N.E.3d 204, 209 (N.Y. 2013); *In re MH-2008-000867*, 236 P.3d 405, 407 (Ariz. 2010).

Authorities recognize, however, that the Due Process Clause of the Fifth Amendment applies. *See Allen v. Illinois*, 478 U.S. 364, 374 (1986). Indeed, our

---

[1] 557 U.S. 305 (2009).
[2] 564 U.S. 647 (2011).

supreme court has noted civil commitment "constitutes a significant deprivation of liberty that requires due process protection." *Matter of Chapman*, 419 S.C. 172, 179, 796 S.E.2d 843, 846 (2017) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). The question here is whether due process dictates a different outcome in this civil case because it is civil rather than criminal.

New York's highest court discussed due process in the context of civil commitment proceedings at length and observed that, although experts may rely on hearsay in forming opinions, allowing an expert to disclose hearsay to the jury has the potential to make that expert a "conduit for hearsay." *Floyd Y.*, 2 N.E.3d at 212 (quoting *People v. Goldstein*, 843 N.E.2d 727, 731 (N.Y. 2005)). The court ultimately held due process "requires any hearsay basis evidence to meet minimum requirements of reliability and relevance" before the evidence can be admitted in a civil commitment proceeding. *Id*. at 213. We agree.

We deal here with a narrow question. As we mentioned earlier, some authorities take the position that the PPG has value in treating sex offenders but that concerns about reliability and a lack of uniform standards preclude its admission as evidence at trial. *See, e.g., Commonwealth v. Ortiz*, 100 N.E.3d 790, 796–97 (Mass. App. Ct. 2018) (collecting cases). Some jurisdictions have held that an expert may rely on a PPG as a basis for the expert's opinion but have expressly declined to consider whether the test results should be disclosed to the jury given the special weight the jury is likely to afford things that have the appearance of scientific evidence. *E.g., In re Commitment of Sandry*, 857 N.E.2d 295, 317 (Ill. App. Ct. 2006). Those questions are not before us, and we expressly note that we do not consider them here.

This case presents the question of whether the circuit court erred in allowing the State to introduce Bilton's PPG test results through Dr. Swan when the test was not performed by Dr. Swan and when there was no demonstration that Bilton's test was reliable beyond Dr. Swan's statements that she was familiar with Dr. Burke's work and that nothing in Bilton's test results indicated there were problems with his test. We agree with Bilton that the circuit court did indeed err.

Although Dr. Swan demonstrated basic familiarity with what a PPG is and how the test is performed, she had never seen one, nor had she seen Dr. Burke perform one. Dr. Swan was not familiar with Dr. Burke's stimulus sets or the machine Dr. Burke used. She also did not know whether Dr. Burke was actually present when the test was conducted.

Neither Dr. Swan nor Bilton had access to the raw data from Bilton's PPG. Bilton specifically mentioned this in the course of his objection below. Dr. Swan also did not perform her own scientific review of the test results. She accepted the test results at face value and disclosed the test results to the jury.

Dr. Swan even vouched for Dr. Burke's work, explaining that Dr. Burke's evaluation tools were "nationally recognized" and that it was important to use someone like Dr. Burke to perform the test because it was important to have a PPG test performed by someone who "does it like every single day."

We are not aware of any authority that would bless this evidence's admission. The State points us to cases in two jurisdictions—Illinois and Washington—but those cases are readily distinguishable. These cases appear to be the main exceptions to the nearly uniform approach of excluding PPG test results from evidence. *See Ortiz*, 100 N.E.3d at 796–97 (collecting cases).

We cited the case from Illinois earlier. Critically, Illinois courts do not examine reliability before "scientific" evidence is admitted. *Commitment of Sandry*, 857 N.E.2d at 312 ("Unlike these courts, our inquiry does not include reliability"). Reliability is one of the three things a South Carolina court *must* assess before an expert's testimony is admitted. *See State v. Council*, 335 S.C. 1, 20, 515 S.E.2d 508, 518 (1999). That same Illinois case also said—explicitly—that it was *not* holding PPG test results could properly be disclosed to the fact finder. *Commitment of Sandry*, 857 N.E.2d at 317 ("We are expressly not presented with, and do not consider, any other questions, such as whether presenting the results of a PPG test directly to the trier of fact would be properly excluded because the prejudicial effect of such evidence would substantially exceed its probative value."). Disclosing the test results to the fact finder is, of course, precisely what happened here.

As for Washington, the State directs us to a case holding that PPG evidence was not novel and not subject to the test for scientific evidence. *See In re Det. of Halgren*, 132 P.3d 714, 719 (Wash. 2006). Also, the expert in that case did not state that the PPG test results were directly related to a sex offender's risk of recidivism. *Id*. Thus, that case has the same distinctions that thwarted the Illinois case's usefulness here.

The State claims this situation is no different from *In re Manigo*, another civil commitment case in which the testifying expert told the jury about that expert's out-of-court conversation with the defendant's counselor. 389 S.C. 96, 105–06, 697 S.E.2d 629, 633–34 (Ct. App. 2010). The defendant had not been honest

about his prior offenses with his counselor. *Id*. The counselor apparently shared this with the court-appointed evaluator. *Id.* There, as here, the evaluator appeared as the State's expert witness at trial. *Id*.

This court rejected the defendant's argument that the circuit court erred in allowing the hearsay, noting that an expert may state an opinion based on facts not within his firsthand knowledge and that the expert may testify to hearsay for the purpose of showing what information the expert used to give an opinion. *Id*. at 106, 697 S.E.2d at 634. The present case poses the different question of whether due process constrains the extent to which an expert may offer hearsay for the purpose of explaining the expert's opinion. As we have explained, due process does not allow an expert to serve as a "conduit" for hearsay without some baseline showing that the hearsay is reliable.

We do not hold that a baseline demonstration of reliability required affording Bilton the right to a face-to-face confrontation of the person who administered his PPG. That would render due process indistinguishable from the right to confrontation, and as we noted above, we did not find any authority applying the confrontation clause to these proceedings. Bilton objected that he had not been provided with the raw data generated by the test. Providing that data may have been sufficient, but we do not hold it would have been sufficient. We wish to emphasize that we are not called on to review whether some hypothetical procedure would qualify as a baseline demonstration that Bilton's PPG test results were reliable. We simply hold, as noted above, that due process does not allow a testifying expert to be a pipeline for someone else's scientific work to be admitted into evidence without a baseline demonstration of reliability. We also note that nothing requires the State to seek the admission of PPG test results as evidence in these cases.

Harmless Error

As with any improper evidence, the next step is to determine whether the erroneous admission qualifies as a harmless error. *See In re Gonzalez*, 409 S.C. 621, 636, 763 S.E.2d 210, 217 (2014) ("No definite rule of law governs this finding [of harmless error]; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." (quoting *Judy v. Judy*, 384 S.C. 634, 646, 682 S.E.2d 836, 842 (Ct. App. 2009))). We do not weigh the evidence when determining this. Instead, we ask "whether beyond a reasonable doubt the trial error did not contribute to the guilty verdict." *State v. Tapp*, 398 S.C. 376, 389–90, 728 S.E.2d 468, 475 (2012).

As we noted at the beginning, the facts that led to Bilton's two sex offenses are deeply disturbing. To those facts, we add the notes that Dr. Swan explained she did not use the PPG as the sole basis of her opinion and that the PPG results—that Bilton had some level of deviant sexual attractions—were arguably cumulative given that nobody disputed Bilton's two previous sex offenses.

Still, we cannot fairly say that beyond a reasonable doubt, the PPG test results did not contribute to the jury's verdict. The PPG test results were presented as empirical proof that the twenty-two-year-old Bilton had deviant sexual attractions and as a material factor for the jury to consider. Dr. Swan said PPG test results were "the one risk factor that carries the highest risk for committing another sexual crime." Many cases recount the special solicitude juries afford testimony that has the appearance of scientific evidence. We doubt the jury ignored the PPG test results in rendering its decision.

**CONCLUSION**

For the foregoing reasons, we reverse the circuit court's judgment and remand for a new trial

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., and GEATHERS, J., concur.**