# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of the Care and Treatment of Francis Arthur Oxner, Petitioner.

Appellate Case No. 2020-001278

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Lexington County
Diane Schafer Goodstein, Circuit Court Judge

---

Opinion No. 28160
Heard March 15, 2022 – Filed June 21, 2023

---

## AFFIRMED

---

Blake Terence Williams and Allen Mattison Bogan, of Nelson Mullins Riley & Scarborough, LLP; Chief Appellate Defender Robert Michael Dudek and Appellate Defender David Alexander, all of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, both of Columbia, for Respondent.

---

**JUSTICE FEW:** For the first time, this Court considers a Sexually Violent Predator Act[1] case arising under subsection 44-48-100(B) of the South Carolina

---

[1] S.C. Code Ann. §§ 44-48-10 to -170 (2018).

Code (2018). In all our prior sexually violent predator cases, the person the State sought to have committed had been convicted in criminal court of a sexually violent crime as a predicate to commencement of civil commitment proceedings under the Act. Subsection 44-48-100(B) applies when a person cannot be convicted in a criminal court because he is not competent to stand trial. The subsection requires that before the State may proceed to a trial to commit such person as a sexually violent predator, "the [circuit] court first shall hear evidence and determine whether the person committed the act or acts with which he is charged." § 44-48-100(B). If the circuit court determines after such a hearing the person did commit the charged acts, then the State may take the civil commitment proceedings to trial. *Id.* The circuit court in this case found Francis Arthur Oxner committed the acts with which he was charged. On appeal, Oxner claims a lengthy delay before his subsection 44-48-100(B) hearing violated his right to a speedy trial, the fact he was never convicted precludes proceedings under the Act, and conducting the subsection 44-48-100(B) hearing while he was incompetent violated his due process rights. We affirm.

## I.      Facts and Procedural History

In 2005, the State indicted Oxner for first degree criminal sexual conduct with a minor, assault with intent to commit first degree criminal sexual conduct (two counts), buggery, and exposure of private parts in a lewd and lascivious manner. The State's forensic psychiatrist found Oxner incompetent to stand trial, so the State dismissed the indictments without prejudice.[2] From 2005 until 2011, pursuant to several probate court orders, Oxner was hospitalized at the South Carolina Department of Mental Health for treatment of his mental illnesses, which included Schizophrenia (Paranoid Type) and Schizotypal Personality traits.

In May 2011, the Department recommended Oxner be transferred to a residential care facility. As required by subsection 44-48-40(A)(1) of the South Carolina Code (2018), the Department notified the multidisciplinary team and the Attorney General of the recommended transfer. The State filed a petition in circuit court on July 11, 2011, requesting the court make a probable cause determination as to whether Oxner qualifies as a sexually violent predator under the Act. On August 16, 2011, the circuit court issued an order finding probable cause to believe Oxner qualifies as a

---

[2] To accomplish this, the assistant solicitor wrote "DNP with leave to re-indict if Δ becomes competent" on the original of each indictment—presumably meaning "do not prosecute . . ." or "dismiss/nolle prosse . . ."—and signed her name.

sexually violent predator. The circuit court ordered a hearing pursuant to subsection 44-48-100(B).[3]

The circuit court did not conduct the subsection 44-48-100(B) hearing until April 21, 2016. The court found Oxner "committed the act for which he was charged," "remains incompetent to stand trial," and "probable cause exists to have [him] evaluated under the Act to determine whether or not he suffers from a mental abnormality or personality disorder that makes him likely to engage in acts of sexual violence if not confined." Oxner immediately appealed the May 18, 2016 final order pursuant to subsection 44-48-100(B),[4] and the court of appeals affirmed. *In re Care & Treatment of Oxner*, 430 S.C. 555, 846 S.E.2d 365 (Ct. App. 2020). We granted Oxner's petition for a writ of certiorari to review the court of appeals' opinion. We affirm the court of appeals.

## II.    Delay of the Subsection 44-48-100(B) Hearing

Oxner argues he was denied the right to a speedy trial because there was "an unexplained, four-year delay" between the initiation of sexually violent predator proceedings in 2011 and the subsection 44-48-100(B) hearing in 2016. The court of appeals declined to address this issue, holding the issue was unpreserved. 430 S.C. at 565-66, 846 S.E.2d at 371. While we are troubled by this unexplained and clearly unnecessary delay, we agree with the court of appeals. Oxner did not raise the timeliness issue until the end of the subsection 44-48-100(B) hearing in April 2016. The circuit court did not address the issue at that point and did not rule on the issue in its final order. Oxner did not file a Rule 59(e) motion asking the court to address the issue. Therefore, whether Oxner was denied the right to a speedy trial because of the delay is not preserved for our review. *See In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("In order to preserve an issue for appeal, it must be raised to *and* ruled upon by the trial court." (emphasis added) (citing *Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998))).

---

[3] In 2014, the State re-indicted Oxner for assault with the intent to commit first degree criminal sexual conduct with a minor, and in 2015, the State re-indicted Oxner for first degree criminal sexual conduct with a minor under the age of eleven.

[4] "If, after the conclusion of the hearing on this issue, the court finds beyond a reasonable doubt that the person committed the act or acts with which he is charged, the court must enter a final order, appealable by the person, on that issue . . . ." § 44-48-100(B).

### III.    "Convicted of a sexually violent offense"

Oxner contends he could not be subject to proceedings under the Act because he did not meet the Act's definition of a sexually violent predator.  The Act defines a "sexually violent predator" as a person who "(a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment."  § 44-48-30(1).  Oxner argues he has never been "convicted of a sexually violent offense."

The phrase "convicted of a sexually violent offense," however, is a defined term under the Act.  The definition includes, of course, persons who have been criminally convicted of their crimes.  § 44-48-30(6)(a)-(b).  The definition also includes a person who "has . . . been charged but determined to be incompetent to stand trial for a sexually violent offense."  § 44-48-30(6)(c).  We have acknowledged this definition before, stating, "The use of the word 'conviction' is somewhat misleading . . . since under the Act it includes persons charged but found incompetent to stand trial, those found not guilty by reason of insanity, and those found guilty but mentally ill." *In re Care & Treatment of Matthews*, 345 S.C. 638, 649-50, 550 S.E.2d 311, 316 (2001).  While Oxner does not meet the colloquial meaning of "convicted of a sexually violent offense," he meets the statutory definition.  Therefore, we agree with the court of appeals that he was subject to sexually violent predator proceedings.

The fact Oxner's charges were dismissed in 2005 makes no difference to this conclusion.[5]  For purposes of the "convicted of a sexually violent offense"

---

[5] Oxner argues he did not meet the subsection 44-48-30(6)(c) requirement of "has . . . been charged" because the 2005 charges were "nolle prossed."  He wrote in his brief, "For legal purposes, at that juncture it was the same as if Oxner had never been 'charged' since the *nolle prosequi* had extinguished the legal effect of the charges." Oxner relies on *Mackey v. State*, 357 S.C. 666, 595 S.E.2d 241 (2004).  In that case, we vacated the petitioner's convictions and sentences because his indictments had been dismissed and the State did not re-indict him before his criminal trial.  357 S.C. at 668, 595 S.E.2d at 242-43.  In the course of explaining that the State may not proceed to a criminal trial after the dismissal of an indictment unless the defendant is re-indicted, we stated, "We adopt a specific, bright-line rule that . . . treats charges *nol prossed* as if they never existed . . . ."  357 S.C. at 669, 595 S.E.2d at 243.  Oxner argues the words we used in *Mackey* require us to find he "has [not]

requirement, it is sufficient that Oxner had been charged in 2005, found incompetent to stand trial, and re-indicted in 2014 and 2015 before the subsection 44-48-100(B) hearing in 2016.

## IV.   Due Process Challenge

Finally, Oxner argues the subsection 44-48-100(B) hearing violated his due process rights because he was unable to assist counsel in representing him due to severe incompetence. He challenges "whether the constitutional guarantees to due process and the effective assistance of counsel can be sufficiently afforded in a proceeding under § 44-48-100(B) where the accused is incompetent and unable to assist counsel." The court of appeals rejected this argument and held the Act "includes significant procedural safeguards that protect an incompetent person from the risk of an erroneous deprivation of his personal liberty interests, while addressing the State's compelling interests in providing treatment for sexually violent predators and protecting the public." 430 S.C. at 569, 846 S.E.2d at 373. We agree.

"The United States Supreme Court 'repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *In re Care & Treatment of Chapman*, 419 S.C. 172, 179, 796 S.E.2d 843, 846 (2017) (quoting *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 1809, 60 L. Ed. 2d 323, 330-31 (1979)). However, "Due Process is not a technical concept with fixed parameters unrelated to time, place, and circumstances; rather, it is a flexible concept that calls for such procedural protections as the situation demands." *State v. Legg*, 416 S.C. 9, 13, 785 S.E.2d 369, 371 (2016) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 33 (1976)).

---

been charged" under subsection 44-48-30(6)(c). We disagree. First, "nolle prosequi" is not a term of art; it is simply an archaic way to describe a dismissal without prejudice. *See Fortune v. State*, 428 S.C. 545, 551 n.1, 837 S.E.2d 37, 40 n.1 (2019) ("'Nolle prosse' is a shortened version of the archaic Latin term 'nolle prosequi.' In plain, modern English, the term means 'to have (a case) dismissed.'" (quoting *Nolle prosequi*, BLACK'S LAW DICTIONARY (11th ed. 2019))). Under *Mackey*, the dismissal of the 2005 indictments meant the State could not proceed to a criminal trial without re-indicting Oxner. There is nothing in *Mackey*, however, or in subsection 44-48-30(6)(c), that prevented the State from seeking a subsection 44-48-100(B) determination that Oxner "committed the act or acts with which he is charged" because—"at that juncture"—he "ha[d] been charged."

When a person charged with a sexually violent crime is incompetent, the person cannot be tried in a court of general sessions. Nevertheless, the State has a significant interest in protecting the public from sexually violent people who threaten the health and welfare of the public, especially children. *See, e.g.*, *Addington*, 441 U.S. at 426, 99 S. Ct. at 1809, 60 L. Ed. 2d at 331 (noting "the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill"). Because the State's right and obligation to protect the public is hindered by the inability to criminally try an incompetent person, the State's only option is to proceed under the Act and seek involuntary civil commitment of the person. This is precisely the reason the General Assembly excluded "the right not to be tried while incompetent" from the constitutional rights available to persons under the Act but granted every other right available to criminal defendants. S.C. Code Ann. § 44-48-100(B) (providing "all constitutional rights available to defendants at criminal trials, other than the right not to be tried while incompetent, apply" in a subsection 44-48-100(B) hearing). Without the exclusion of this right, the State is unable to protect the public from some dangerous sexually violent persons.

While Oxner certainly has the right to due process during his subsection 44-48-100(B) hearing, his due process rights are satisfied by the safeguards articulated in the Act.[6] While these procedural safeguards may not be perfect, any potential defects are reasonable in light of the circumstance that Oxner is not competent to stand a criminal trial. Under the very specific procedures outlined in the statute, the risk of an *erroneous* deprivation of Oxner's—any incompetent person's—liberty

---

[6] For instance, subsection 44-48-100(B) requires compliance with the rules of evidence, provides all constitutional rights available at criminal trials (except the competency requirement), requires various findings the circuit court must make before determining whether the person committed the acts, allows the right to appeal those findings before being tried, and requires the application of the highest burden of proof. S.C. Code Ann. § 44-48-100(B). In addition, section 44-48-90 of the South Carolina Code (2018) grants the right to a jury trial on the ultimate question of whether the person is a sexually violent predator, permits additional expert witnesses paid for by the State if the circuit court finds it necessary, and guarantees experts have access to the individual and his records. Finally, if the person is tried and subsequently committed as a sexually violent predator, the person has the ability to petition the circuit court for release from commitment at any time. S.C. Code Ann. § 44-48-110 (2018).

interest by involuntary civil commitment is significantly reduced if not completely eliminated.  *See United States v. White*, 927 F.3d 257, 265 (4th Cir. 2019) (considering a due process challenge to the federal SVP commitment scheme and concluding "that the risk of an erroneous deprivation of [the person's] liberty interest is substantially and adequately mitigated by the broad array of procedures required" by the statute).

## V.    Conclusion

We find the circuit court did not err in finding Oxner "committed the act or acts with which he is charged" under subsection 44-48-100(B).  We remand the case to the circuit court for "a trial to determine whether [Oxner] is a sexually violent predator" as required by subsection 44-48-90(A) of the South Carolina Code (2018).

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, JAMES, JJ., and Acting Justice Kaye G. Hearn, concur.**